[Opinion delivered March 17, 1882.]

---

### BALL, HUTCHINGS & CO. v. CARRIE C. LOWELL.
#### (Case No. 1372.)

1. PREPARATION OF TRANSCRIPTS — CONSTRUCTION OF STATUTE.— See opinion for the construction of the statute concerning the making out and transmitting a transcript to the district court in case of appeal thereto from the county court.
2. HOMESTEAD MAY BE ESTABLISHED ON SEPARATE PROPERTY OF WIFE.— The homestead may be established on the separate property of the wife, and when so established it is the homestead of the family protected by the constitution.
3. WHEN NO ALLOWANCE IN LIEU OF HOMESTEAD MADE.— When the husband dies leaving the homestead so established, no allowance in lieu of a homestead is to be made.

APPEAL from Galveston.  Tried below before the Hon. Wm. H. Stewart.

On the 16th of August, 1880, the appellee, Carrie Lowell, as the widow of H. Lowell, deceased, for herself and her two minor children, aged respectively nine and twelve years, filed her application in the county court of Galveston county, in the matter of the estate of H. Lowell, deceased, for an allowance in lieu of homestead and other exempted articles, alleging that they did not exist in kind in the estate; and also for one year's support for herself and her children. On the 4th of October, the appellants, Ball, Hutchings & Co., creditors, filed their opposition to said application, mainly upon the ground that the deceased acquired lot number three (3), in block number six hundred and twelve (612), and improvements thereon, in the city of Galveston, in 1871, and occupied the same with his family as a homestead continuously to the day of his death. That in 1875 he transferred the said lot to his wife by deed of gift, but the homestead character of the same was never changed, and the property was used and occupied as such by himself and family to the time of his death. That said house and lot being the homestead, the widow ought not to be permitted to claim another and different homestead out of the estate, or to claim an allowance in lieu thereof. Ball, Hutchings & Co. were creditors of the estate, having a lien on lot 7 of the subdivision of the north half of block 683, in the city of Galveston, evidenced by deed of trust executed by Henry Lowell in his life-time. Their claim was duly probated. On the 5th of October, 1880, the county court rendered a decree allowing the appellee $3,600 in lieu of homestead, because there was not among the effects of the deceased, Henry Lowell, any homestead of the family; and also allowing $1,200 for the support and maintenance of the appellee and her two minor children for one year; and the further sum of $400 in lieu of other exempted personal property. To satisfy these allowances, the administratrix was ordered to sell the property of the

estate, including that upon which appellants held a lien. Appellants took the case into the district court of Galveston county by appeal, and the cause was tried *de novo*, resulting in a decree, February 9, 1881, in favor of appellee, allowing her $2,000 in lieu of homestead, on the ground there was not among the effects of the deceased, Henry Lowell, a homestead of the family; $1,200 for one year's support, and $400 in lieu of other exempted articles. The administratrix was ordered to sell the property of the estate to raise money to pay said allowances, and was required to sell said mortgaged property last. The appellants, Ball, Hutchings & Co., brought the case into this court by appeal. [The above is from the brief of appellants.]

The appeal bond was filed within the prescribed time for appeal from the county to the district court, and the transcript was prepared, but the clerk, being unaccustomed to the duties of his office, failed to deliver the same to the clerk of the district court in time for the next term thereof after the appeal. A motion was made by appellee in the district court to dismiss the appeal, on the ground of non-compliance with the statutory requirement as to transcripts, which motion the court overruled, and an appeal was taken on that ground by appellee.

*Ballinger & Mott,* for appellants.

*John T. Harcourt,* for appellee.

I. It is made the imperative duty of the court to set apart for the use and benefit of the widow and minor children of the deceased all such property of the estate as may be exempt from forced sale by the constitution and laws. And in case there should not be among the effects of the deceased all or any of the property so exempted, the duty is imperative to make a reasonable allowance in lieu thereof. R. S., arts. 1993, 1994, 1995;

Scott *v.* Cunningham, Tyler Term, 1881; James *v.* Thompson, 14 Tex., 466.

II. It is the property of the estate, and the effects of the deceased only, that can be set apart by the court. The new inventory, filed September 28, 1880, was substituted as a correct inventory of the property of the estate. There was not found among the effects of the deceased in that inventory any homestead. Lot No. 3, block No. 612, where the deceased had lived, was the separate property of the surviving widow, conveyed by deed dated June 5, 1875. The house was old and untenantable, and not worth fixing. Const., sec. 51, art. 16; R. S., arts. 1993, 1994, 1995, 2003; Green *v.* Crow, 17 Tex., 184; Mabry *v.* Ward, 50 Tex., 404; Scott *v.* Cunningham, Tyler Term, 1881; Law Journal, December 14, 1881. The court erred in not deciding that lot No. 3, in block No. 612, and improvements in the city of Galveston, was the homestead of the deceased, Henry Lowell, and his family, at the time of his death. Same authorities as cited above.

BONNER, ASSOCIATE JUSTICE.— Appellee, Carrie C. Lowell, presents by cross-assignment of error the preliminary question, that the court below erred in not dismissing the appeal to the district court from the county court.

We do not think that the court erred in overruling the motion to dismiss the appeal to the district court.

The statute made it the duty of the county clerk to make out and transmit to the clerk of the district court the transcript; and further provided, that if he could not, for want of time, do so to the first succeeding term, he should to the next term thereafter; showing that time was not absolutely essential to give the district court jurisdiction. The transcript was filed within a day or two after the time fixed for the meeting of the first term

of the court after the appeal.   The clerk gave an excuse
for the delay, which, if not altogether satisfactory to ex-
cuse him, should, we think, under the circumstances, be
held sufficient to prevent the prejudice which would have
resulted to appellants, Ball, Hutchings & Co., by a dis-
missal of their appeal.

The material question in the case is, did the court below
err in making the allowance of $2,000 in lieu of a home-
stead, and in ordering the property upon which Ball,
Hutchings & Co. had a lien by trust deed, to be sold to
raise the amount of this allowance?

The constitution provides that the homestead of a
family shall be and is thereby protected from forced sale
for the payment of all debts except those of certain speci-
fied classes.   Const. 1876, art. 16, sec. 50.

The preceding section gives to the legislature the
power, and makes it their duty, to protect by law from
forced sale also, a certain portion of *personal* property;
which has been done.

A homestead may be the separate property of the hus-
band, the community property of the husband and wife,
or the separate property of the wife.   If the latter, the
husband still has a homestead right in it, and should
the wife die first he has an interest by inheritance, and the
other heirs of the deceased wife cannot compel a partition
of it so long as he may elect to use or occupy it as a
homestead.   While both husband and wife live and oc-
cupy it as such, it is in fact and law the homestead of
the family.   Const. 1876, art. 16, sec. 52.

The evident intention and object of the homestead
exemption was to provide a home for the family; and
under our statute this exemption does not cease with the
death of the husband; but if it were his separate prop-
erty even, it still remains the homestead of the family
so long as it in fact continues to be used as such; and it
is made the duty of the court to set it apart for this pur-
pose.   R. S., art. 1993.

The statute provides that, in case there shall not be among the "effects" of the deceased all or any of the property exempted from execution by the constitution and laws of the state, the court shall make a reasonable allowance in lieu thereof. R. S., art. 1994.

By another article of the statute the word "effects" is defined to include all personal property and all interest therein. R. S., art. 3138, subdiv. 12.

Article 1994 of the statute does not in express terms provide for an allowance in lieu of the homestead *eo nomine*, and the particular article which gives the allowance might, under the statutory definition of the word "effects," be construed to apply to exempt personal property only. R. S., art. 1994.

It may be inferred, however, by the succeeding article, that a homestead is embraced within the language of the statute, for which, when one does not exist in kind, an allowance is to be made. But we are of the opinion that the statute did not intend to include a case like the present, where the widow and children already have a homestead, and which was the homestead of the family during the life-time of the husband and at his death.

When the husband dies the wife becomes the head of the family, and the children, so long as they remain with her, are constituents of that family. The allowance in lieu of the homestead must be presumed to have been provided for the purpose of purchasing a homestead. No person, however, is privileged to be protected in two homesteads; and if the family already has an existing one, which was the family homestead during the life-time of the husband and at his death, though it may be the separate property of the wife, then the policy and objects of the law are fulfilled.

The intention of the legislature was to provide out of the assets of the deceased a homestead for the family, if they had none, and not, as in a case like the present, to provide an allowance in lieu of that which already ex-

isted.   An allowance can be given in lieu of that which has no existence, but it would be a perversion of the term to give it in lieu of that which already has an existence.

Again, in the case under consideration, the homestead had been conveyed by the husband to the wife, not for a valuable consideration, but as a gift, stating that it was given to her as the homestead, so that if anything happened to him she would be protected in it as a homestead — language almost prophetic, in view of his subsequent tragic end.

He thus did in his life-time simply what the statute would have done after his death.

The property now sought to be sold to make up the allowance in lieu of the homestead was incumbered by the deceased husband by trust deed to appellants, Ball, Hutchings & Co., and that, too, at a time when he was in the possession and enjoyment of this family homestead.

Under the circumstances of this case, to now subject this property for an allowance in lieu of this still existing homestead, and thus practically to defeat this express lien upon it, would, in our opinion, be a perversion of the statute, and would shock the moral sense of mankind as being against the common dictates of justice and equity.

The judgment of the court below, so far as the same orders an allowance of $2,000 and sale of property to satisfy the same, in lieu of a homestead, is reversed, and that part of the application of the appellee, Mrs. Carrie Lowell, dismissed.   It is further ordered that said judgment in all other respects be affirmed, appellants Ball, Hutchings & Co. to recover the costs of this appeal, and that to the district court to be paid in due course of administration.

REVERSED AND REFORMED.

[Opinion delivered March 24, 1882.]

## DISSENTING OPINION.

STAYTON, ASSOCIATE JUSTICE.— Not being able to concur in the opinion of the majority of the court, I will briefly state the grounds of my dissent.

The statute provides that, "At the first term of the court after an inventory, appraisement and list of claims have been returned, it shall be the duty of the court, by an order entered upon the minutes, to set apart for the use and benefit of the widow and minor children and unmarried daughters remaining with the family of the deceased, all such property of the estate as may be exempt from execution or forced sale by the constitution and laws of the state, with the exception of any exemption of one year's supply of provisions." R. S., art. 1993.

" In case there should not be among the effects of the deceased all or any of the articles so exempted, it shall be the duty of the court to make a reasonable allowance in lieu thereof, to be paid to such widow and children, or such of them as there may be, as hereinafter directed." R. S., 1994.

" The allowance in lieu of a homestead shall in no case exceed five thousand dollars, and the allowance for other exempted property shall in no case exceed five hundred dollars, exclusive of the allowance provided in the preceding chapter." R. S., 1995.

The first inquiry that arises under these articles is, to what property do they refer?

Art. 1993 refers to property exempted "*by the constitution and laws of the state.*" No property is exempted by the constitution except the homestead (Const., art. XVI, sec. 50); but power is given to the legislature by section 49 of same article to exempt other property.

It is true that the constitution does provide that " No current wages for personal services shall ever be subject to garnishment;" but ordinarily the word " wages " would not be held to have so broad a meaning as would

be required to induce the belief that the legislature had that in view in the articles above referred to; besides, the intent of the constitution in exempting current wages was to enable a person to provide a present support, and could have had no reference to the allowance to the family of a deceased person; but if so, that could not affect any other exemption clearly made.

By the use of the words, "all or any of the specific articles so exempted," in art. 1994, we are referred to the preceding article for the measure of the exemption, in lieu of which, where the articles do not exist in kind, an allowance is to be made in money or other property; the measure as thus given is: "All such *property of the estate* as may be exempted from execution or forced sale by the constitution and laws of the state."

Art. 1995 in terms provides for an allowance in lieu of homestead, and fixes the maximum amount thereof. To my mind these provisions of the statute apply to an allowance in lieu of homestead as fully as they apply to an allowance in lieu of personal property exempt; and as if to intensify and render certain beyond dispute the full meaning of the law, and to make it clear that an allowance shall be made in lieu of *every article* of exempt property not found among the property of the deceased, it declares that if there be not among the effects of the deceased "*all or any* of the specific articles so exempted," that is to say, all of the property exempted by the constitution or statute law of the state, that it shall be the duty of the court to make a reasonable allowance in lieu of any article of exempt property *which may not exist among the property of the deceased.*

It is true that art. 1994, R. S., does use the word "effects," and that art. 3140, R. S., in defining that word, declares that it "includes all personal property and all interests therein;" but it also provides that such shall be the meaning of the word "unless a different meaning is apparent from the context.

When we consider that property in lieu of which an allowance is to be made is that exempted by the constitution as well as that exempted by the statutes, and that nothing is exempted by the *constitution* except the homestead, which is neither personal property nor an interest therein, to my mind it is evident that the word "effects," in art. 1994, is not used in the restricted sense claimed for it, but in a sense broad enough to embrace any description of property exempted.

It is claimed, however, that as the wife owned in her separate right a homestead, the statute does not contemplate an allowance in lieu of a homestead out of the estate of the deceased husband.

While the separate property of the wife may have been the homestead of the family during the life of the husband, it certainly is true that such property cannot be said to be "among the effects of deceased," that is, property pertaining to the estate of the deceased husband; and the statute evidently contemplates that the exempt property, if it exists in kind, shall be *taken out of the estate of a deceased husband,* and if such property does not exist among the property of the deceased, an allowance in lieu thereof shall be taken from property which does belong to such estate; for it is in lieu of property not found among the property of such estate that the statute declares the allowance shall be made.

If it had been the intention of the legislature that the wife and family of a deceased person should have no allowance out of *his estate* when the wife owned a homestead in her separate right, it would have been so easy to have said so, that I cannot believe it was so intended in the absence of a declaration to that effect, in the face of the language used by the legislature.

In regard to the allowance for the support of the family for twelve months, the legislature declared that "no such allowance shall be made for the widow when she has separate property adequate to her maintenance; nor

shall such allowance be made for the minor children when they have property in their own right adequate to their maintenance." Art. 1986, R. S. Why not so have declared in reference to allowance in lieu of exempt property if it was so intended?

In the case of Mabry v. Ward, 50 Tex., 411, it was in effect decided that the fact of the wife and children having ample separate estate for their maintenance would not under the statute defeat their right to the allowance in lieu of homestead and other exempt property; and I cannot clearly see why, if some of the property so owned by the wife in her own separate right be a home in which the family have resided, she and her children should be precluded from the allowance by reason of that fact, while with ample wealth with which to buy many homesteads the allowance for all exempt property would be made.

The articles of the Revised Statutes before referred to provide a rule for all cases, and articles 1996, 1997 and 1998 recognize the fact that the children of a decedent may not be the children of the surviving wife; and that upon the death of the father, the home which was his home, but the separate property of the wife, may not longer be their home, and provides in the distribution of an allowance for the protection of such children, even though they be adult but unmarried daughters. To them it would in many cases be but poor comfort to be informed that their stepmother owns a homestead.

It was intended by the statute to protect such persons, and in my judgment this can only be done by giving effect to the plain letter of the statute.

The course of legislation in this state upon the subject of allowances to the surviving family have fluctuated, but step by step the allowance has been liberalized.

Under the act of 1843, such property of a decedent as was exempt from forced sale was set apart to the use of

the widow and children; but if not found in kind, no provision was made for an allowance in lieu thereof.

The act of 1846, after directing that the exempt property should be set apart to the widow and children if found in kind, provided, if the property should not exist in kind, that a sufficiency of the estate should be sold to procure the exempted articles.

The act of 1848 contained substantially the same provisions in regard to setting apart for the use of the widow and children the exempt property, but contained the further provision, that an allowance in money or other property of the estate should be set apart to the widow and children of the decedent in lieu of exempt property not found among the effects of the estate; this act also provided for the distribution of the allowance among the beneficiaries.

The act of 1870 simply provided that "the property reserved from forced sale by the constitution and laws of this state, or its value, if there be no such property, does not form any part of the estate of a deceased person where a constituent of the family survives;" but it gave no specific directions in regard to the distribution of the exempt property or its value.

The act of August 9, 1876, which is carried into the Revised Statutes, is in its provisions very similar to the act of 1848, but as before stated it makes unmarried daughters beneficiaries without reference to their ages; and in case of an allowance in lieu of exempt property, it provides that "If there be both widow and children, the whole to be paid to such widow if she be the mother of such children, but if she be not the mother of such children, one-half to be paid to such widow and the other half to such children if they be of lawful age, or to their guardians if they be minors, or to be equally divided between them." R. S., 1998.

These facts, in addition to what seems to me to be the

true import of the language used by the legislature, force upon me the conviction that the fact the wife may own a homestead, yea, a homestead made her separate property by the gift of the husband, which is but her separate property however acquired, cannot deprive her, or his children by her, or the children of the husband by a former wife, of their right to an allowance in lieu of homestead, out of the husband's and father's estate.

Nor am I prepared to say, where the statute provides as it does, a means by which creditors who take lien upon property may so secure it, that it will not be subject to sale to make up allowance in lieu of exempt property (R. S., 2000), if they fail to do so, that legislation which appropriates property as I believe it ought to be under the law, in this case, should shock the moral sense of mankind as being against the common dictates of justice and equity.

The whole matter was one for legislative discretion, which we must presume has been exercised wisely; but whether so or not, I have a deep conviction that I have no right to dispose of the question in accordance with my own sense of abstract right or equity, if the same be in conflict with the expressed intention of the legislature.

If the spirit of the law be bad, let it be repealed by that department of the government whose duty it is to make and to repeal laws.    Entertaining the views which I do in regard to the construction of the statutes, I cannot consent to assist in repealing thereby a construction which my judgment does not approve.

## ON MOTION FOR REHEARING.

GOULD, CHIEF JUSTICE (separate opinion).—I avail myself of the opportunity presented by the motion for rehearing to state, very briefly, some reasons for adhering to the conclusion originally reached by a majority of the court.

In the first place I remark that the allowance, if made, defeats an express lien, clearly valid when given. Unless such be the clearly expressed legislative will, this should not be done.

Giving to the word "effects" the meaning affixed to it by the statute, we have substantially a provision, that if there should not be amongst the personal property of the deceased all or any of the specific articles exempted by the constitution and laws of the state, the court shall make a reasonable allowance in lieu thereof to be paid to the widow and children, or such of them as there may be. R. S., arts. 1993, 1994.

But it is said that the context makes it apparent that the word effects should be construed as meaning property of all kinds: 1st. Because subsequent articles plainly show that the allowance is to be made in lieu of a homestead. 2d. Because the statute directs an allowance in lieu of property exempt by the constitution, and the constitution, it is said, exempts the homestead, but does not exempt any personal property. To this last position it may be answered, that the constitution makes it the duty of the legislature to protect from forced sale "a certain portion of the personal property of all heads of families;" that it exempts current wages from garnishment, and that the statute enumerates this as one of the items of "property exempt from forced sale." R. S., art. 2335. It seems to me a mistake to say that the constitution exempts nothing but the homestead, and to argue that there is no personal property exempt by the constitution.

But, beyond question, the subsequent articles of the statute do plainly show that an allowance is to be made in lieu of the homestead, where there is no homestead of the family. Such has been the uniform and unquestioned usage under the various probate laws of the state. If the maintenance of this allowance required the word "effects" to mean "property of all kinds," I should un-

hesitatingly give it that meaning.   But, as already indi-
cated, I am of opinion that this allowance would stand,
by reason of the articles of the law regulating it, if article
1994 were stricken out.   It is not so clear that article 1994
was designed to cover the entire subject or field of allow-
ances, as to make it apparent that the word effects was
used in other than its statutory meaning.

But if it be conceded that the statute used the word in
the sense of property, it does not clearly appear that the
design was to do anything more than to secure an allow-
ance where there was no family homestead.   The probate
law of 1870, which has always been construed in its main
provisions as harmonizing with the previous statutes, had
this provision: "The property reserved from forced sale
by the constitution and laws of this state, or its value *if
there be no such property*, does not form any part of the
estate of a deceased person," etc.   Pasch. Dig., art. 5487.
Under this law, where there was a homestead of the
family at the time the husband died, it would seem that
there was no authority for deducting its value also from
the estate.   Neither under the act of 1870 or of 1848 has
any case been cited where an allowance in lieu of a home-
stead has been maintained, or even ordered, where there
was a family homestead.

To reach the conclusion that an allowance in lieu of a
homestead is to be made where there is a homestead of
the family, though established on the separate property
of the wife, we have to disregard the literal meaning of
the terms used in the statute, as well as the spirit and
object of the homestead exemption.   I do not believe
that the legislature intended to double the homestead ex-
emption in case of estates; or to enable parties, by vesting
the title to their homestead in the wife separately, to
secure substantially a double exemption in case of death.
The spirit and end of the law and its liberal terms being
both satisfied, I do not see any sufficient reason for depart-

ing therefrom. There is no such clearly expressed legislative will as justifies a construction which defeats an express lien, otherwise valid.

It is argued that this may leave the husband's children by a previous marriage with no homestead possession. This is true; but this might happen if the homestead were the property of the last community, and the surviving wife saw fit to qualify as survivor, and to sell the homestead. Our homestead laws have never yet reached the completeness of a well matured and perfected system. Inequalities abound everywhere. The legislative enactments fall far short of securing to every family equal exemption, as well as of securing a fair distribution of the benefits of the exemption after the death of the husband. Arguments based on such imperfections of the statute are far from conclusive. They fail to convince me that this court erred in refusing the allowance, there being at the time of the husband's death a family homestead.