## L. A. CLIFT v. KAUFFMAN & RUNGE, ET AL.

### SUPREME COURT, AUSTIN TERM, 1883.

*Mixed title.*—Vide facts for respective interests of decedent, his children by former wife, and surviving widow and her children.

*District and County Court—Practice.*—The District Court erred in undertaking to consider, as an element of its judgment, what separate property might be owned by the children of the first marriage, and the homestead allowance could be set apart by the Probate Court from the estate of the decedent alone.

*Homestead—Allowance for Widow.*—Where no homestead can be found among the effects of the deceased, an allowance should be made for the surviving widow, in lieu of the homestead, which cannot, in the nature of things, be set apart in kind.

*Rights of Widow to a Homestead.* --Because some one properly under same roof is provided with a home, the widow is not to be deprived of her legal demand for such.

*Cases cited and discussed,—*57 Texas, 674; 56 Texas, 579; 47 Texas, 380; 50 Texas, 404; and 57 Texas, 460. A conflict intimated between the second and last cases.

Appeal from Ellis County.

*Powell & Groce,* for appellant.

*L. C. McCormick,* for appellees.

Opinion by West, J.

The homestead of L. A. Clift, during his married life, and at the time of his death, was situated on lots 4, 6 and 7, in block 9, in the town of Waxahachie. In the brick building, situated on a part of lot No. 4, he had a store, and there exercited his business or calling,

of selling goods, wares and merchandise. The family residence, or home proper, occupied during his lifetime by the decedent, with his wife and children, was situated on lots 6 and 7. The brick store, or at least the very small undivided portion of it owned by the intestate in his own right, and in which he carried on his business as a merchant, according to the previous decisions of this court, constituted, at the time of his death, a part of his homestead. Miller v. Menke, 56 Texas, 549; Henderson v. Ford, 46 Texas, 628; Pryor v. Stone, 19 Texas, 321. Also, see Carter v. Randolph, 47 Texas, 380; Green v. Crow, 17 Texas, 187; Reives v. Petty, 44 Texas, 249; Clements v. Lacy, 51 Texas, 165; Gilliam v. Neill, Galveston Term, 1882, and other recent cases; Mabry v. Ward, 50 Texas, 404; McDonald v. Campbell, 57 Texas, 615.

The small and undivided interest of L. A. Clift in this brick store house at the time of his death, consisted of only a front of five feet in lot 4. This portion being his undividual share of the south half of the north half of the unsold remainder of that lot, his children by his former wife owning in their own right the remaining unsold balance of this lot, and as his heirs, having also, an equal claim in common, with the children of his second marriage, on these five feet owned by him, his second wife's interest in this property. was practically nothing.

Lot number 6, on which a portion of the family residence was situated, was the exclusive property of his deceased wife's children. Neither the surviving widow nor her children, having a shadow of title to it, or claim upon it, in any manner. In lot number 7, the children of the first wife, also, have an exclusive interest of one half, and an equal interest, with the children of the second marriage, in the remaining half of it.

The surviving widow, has, for all practical purposes, no interest in her husband's one-half of lot number 7. This one-half having been the separate property of her deceased husband, and as a consequence, as before said, this remnant of lot number 7, is held practically to her own exclusion, by her own children, jointly with the children of the first marriage.

The entire property composing the family residence proper, with its improvements, situated on lots 6 and 7, is of no great value and has been in use since 1858.

Owing to the positions of the buildings and improvements constituting the family residence, and the state of the legal title to lots 6 and 7, and also to the character of the title and the extent of the interest of the estate of the deceased in lot number 4, the district court was in error, under all the circumstances of the case, in not granting the surviving widow and children a suitable allowance out of the estate, in lieu of the homestead, as is provided in the statute. Rev. Stat., p. 294, Art., 1993, *et seq*; Mabry v. Ward, 50 Tex., 404.

It was error in determining this question as to the homestead exemption, for the court, as one of the elements entering into its judgment, to take into consideration what separate property might be owned by the children of the first marriage, or might be held by them, as constituting a part of the separate estate of the intestate's first wife. The homestead allowance, if set apart at all by the probate court for the surviving widow, must be set apart alone, from the estate of the decedent, over which that court has jurisdiction. It is only over the property of the estate that the probate court can exercise control.

In Presley's Heirs v. Robinson, 57 Texas, 460, it was held that Mrs. Robinson, the widow of Presley, though when she married him she was herself a widow and possessed of a homestead of her own, and at the death of Presley still owned and controlled it, was, nevertheless, entitled to a homestead right, and interest in the estate of her second husband, and that she still did not forfeit that right, by marrying a third husband, after Presley's death. Carter v. Randolph, 47 Texas, 376; Shryock & Roland v. Latimer, 57 Tex., 675; Putnam v. Young, 57 Texas, 461.

Here, if lots 6 and 7, on which the family residence was situated, were entirely the property of the children of the first wife, and constituted no part whatever of the assets of the intestate's estate, it cannot be denied, but that under the language of the constitution (Art. 16, Sec. 51) and the provisions of the statute (Rev. Stat., Art. 1990, *et seq*.) and under the previous decisions of this court, construing the constitution and laws on this subject, (Miller v. Menke, *supra*; 1 Vol. Pas. Dig., Art. 1305 and note 481) the appellant, as the surviving widow, would be entitled to have the homestead, or its value, set apart to her out of her deceased husband's estate. If this be not done, she would have no homestead, or allowance in lieu of it.

The residence of her step-children, is no more her property, or her home, as a matter of right, than is the home of a stranger. Were this not so, the step-children, on arriving of age, and in fact long before that period, on the application of their guardian, might partition, parcel out, or sell, the family residence, which is entirely their property and subject to their undisputed control, and to which the step-mother has no color of right, unless she happens to be the guardian of the children. In that event, her right to remain in possession of the family residence, would not be based on the assumption that it was the homestead of her deceased husband, or on the ground that she was the surviving head of the family, but because she happened to be for the *nonce* the guardian of the minors. And this relation even, she could not sustain to them without their consent, at least in the present case, for now the youngest of them is over fourteen years of age, and the eldest is of full age. Rev. Stat., Art. 2505.

In this state of affairs, with the family residence, and the business house of the decedent in the condition as to the title and interest of the intestate in it, in which the record discloses them to be, it can not be said that there is such a homestead as can be itself set apart to the widow and children. It presents a case similar in its features to one, where it may be said that no homestead can be found as belonging to the estate of the deceased, among the effects of the estate. Rev. Stat., Art. 1990. In such a case, it becomes the duty of the court to make the allowance, in lieu of the homestead, which cannot in the nature of things be set apart in kind.

The fact that some one who happens to be at present an inmate of the same house with her, or who happens for the time being, to be even a member of the same family, owns a residence with all the appurtenances and comforts of a home, cannot deprive the surviving widow of the right to her homestead. The fact that some one else, who is an acquaintance of her's, or ward, or niece, or nephew, or step-child, or who lives under the same roof with her, is provided with a comfortable home, is no answer in law to her demand, for that to which under the law, she is entitled. The interest of L. A. Clift, deceased, in lot No. 4, his interest being as before stated, an undivided front of five feet, upon his death. under the rule laid down in Miller v. Menke, before cited, being a part of the homestead up

to the hour of his death, did not, by reason of that event, as the district court held, become divested of its exempt qualities, because his wife and surviving children did not propose, or were not able to carry on the same business that he had in his lifetime for their support pursued.

On the contrary, under the operation of the constitution and laws, the estate being insolvent, his title to it and his interest in it, undivided, and just as it was, passed at once to, and vested in, his rightful heirs on his death. Rev. Stat., Art. 2002.

The case of Shryock & Roland v. Latimer, 57 Texas, 674, referred to in argument, presents a different state of facts from the present. In that case, it was held that the head of the family, who was still alive, had under the facts of the case, abandoned and ceased to use the property as a place in which to exercise his calling, or business, and being so abandoned by him, for that reason, and that alone, it was no longer protected as a part of the homestead. He had ceasad to use it as his place of business, or to exercise his calling. Here, the property was used as a place of business by the intestate up to the time of his death. He never at any time abandoned it, and hence at his death by the operation of law, it passed to his heirs, as did the balance of his homestead. But owing to the position, character and nature of the improvements constituting the family residence, as well as the state of the legal title to the property itself, we believe that the judgment of the district court should be reversed, and the cause remanded, with directions to the court below to have a sale made of the unexempted property of the estate to raise an allowance to the amount of $2,000, to be divided between the widow, and the children by the first wife, as seems to be required by the statute. Rev. Stat., Art. 1998.

As the action of the district court appears to have been, to a considerable extent influenced by his views as the effect to be given to the case of Lowell v. Ball, Hutchings & Co., (56 Texas, 579) it may be proper to make a remark in reference to that case.

The two cases are not similar, viz : that case, the court held that there was already a homestead in existence, located on the separate property of the surviving wife. In this case the family residence of the family is situated on property, in which the surviving wife has practically no title or interest, legal, or equitable. So far as she is concerned, the residence is situated on the property of strangers.

Another point of difference too, is, that in that case the homestead had been originally the common property of the two spouses and the husband had given it to the wife to be specially used as a homestead. Another reason, too, given by the court, for refusing, in that case, the application of the surviving wife, was, that the other property, out of which the allowance in lieu of the homestead was sought to be raised, had been already encumbered by the husband in his lifetime with a deed of trust, and that it was in some sort, under the facts of that case, a breach of faith with the creditors to take it from them, and give it to the wife when the husband, had in his lifetime, expressly provided her with a homestead, which she was then actually using and enjoying. The court, also, in its opinion in that case, notes other points which go to show, that in several respects the two cases are dissimilar.

We do not regard the decision in this case as in conflict with that of the court in the case of Lowell v. Ball, Hutchings & Co. It is, therefore, unnecessary to determine, if this case was in all its features similar, whether being a decision of very recent date we would regard it as authority binding on us. It may, however, be proper to say, that the decision was confessedly made, and must be considered with reference to the precise state of facts then before the court, and to which the court was then addressing itself. It may also be observed that the decision, though undoubtedly one that was much considered by the court before its final conclusions were arrived at, and for that reason, entitled to very great respect, did not at the time receive the assent of the entire court, and that each member of the court deemed it proper to place upon record separately the special reasons, which had brought his mind to the conclusions reached. It may also be observed in this connection, that the members of the court constituting on that occasion its majority, did not base the conclusions reached by them, on precisely the same grounds. As we have before remarked, however, that case was different in its facts from this, and the two are not in conflict. We wish, then, to be understood, as not now bringing in question the correctness of that decision by which the court below seemed to be to some extent governed in its action in this case.

On a proper occasion, and after full argument and due consideration, when a case shall arise in which the exact question shall be

presented that was presented in Lowell v. Ball, Hutchings & Co., it will be time enough to determine whether we will adopt that decision as a guide.

It may be, however, proper in this connection to add, that it always appeared to us, that upon a close examination of the case, there may be found to exist a partial conflict between it and the subsequent case of Presley v. Robinson, cited above, and some previous decisions of the court. (See Carter v. Randolph, and Mabry v. Ward, cited above; and perhaps other cases.)

The judgment is reversed and remanded, with directions to the court below to proceed in said cause in accordance with the views here expressed.