MARTHA M. SHIPPEY ET AL. v. NETTIE HOUGH.

Decided November 2, 1898.

1.  Homestead—Widow—Husband's Separate Property.

The homestead right of the widow, as against the heirs of the deceased husband, was not limited to the thirty or forty acres actually improved and occupied during his lifetime, but extended to 200 acres, the tract embracing 322.

**2. Same—Selection.**

The widow had the right to select the 200 acres out of the larger tract; and she could choose the best land, and was not restricted to running the lines in any particular form.

APPEAL from McLennan. Tried below before Hon. MARSHALL SURRATT.

*Clark & Bolinger,* for appellants.

*D. A. Kelley,* for appellee.

KEY, ASSOCIATE JUSTICE.—The nature and result of this suit is thus stated in appellants' brief:

"Appellants, Martha M. Shippey, C. W. Shippey, George W. Shippey, and Norman F. Hough, as plaintiffs in the court below, brought suit in trespass to try title and for partition against Nettie Hough, the appellee, claiming an undivided one-half interest in and to a tract of 320 acres of land known as the Peter Bolinger survey, and also for other lands, not necessary to mention here. The respective interests of the appellants were alleged to be as follows: Martha M. Shippey, an undivided one-third interest; Norman F. Hough, one-twelfth interest; George W. Shippey, one-twelfth interest, making in all an undivided one-half interest of appellants. The appellee pleaded in the court below general demurrer, plea of not guilty, general denial, and further, a special answer to the effect that all other property sued for excepting the 320-acre survey was the community property between herself and deceased husband; and there being no children born to them, nor no child or children of the said R. S. Hough surviving him, she inherited all of his community property under the statute; that of the 320 acres survey sued for, she pleaded that a homestead of 200 acres, established on said land previous to and at the time of the death of the said R. S. Hough, was not subject to partition, and also pleaded a claim for improvements upon the same, but admitted, in view of the fact of her occupancy of the said land, which she alleged was not in opposition to the claim of these appellants, and in view of the claim that appellants made for rents and profits, that she was not entitled to pay for improvements and appellants were not entitled to rents and profits, and claimed to have held as a tenant in common with the appellants herein the balance of said 320 acres of land, not her homestead, not adversely to the appellants, and prayed that 200 acres, homestead tract, be set aside to her and not partitioned, and that one-half of said homestead tract in fee be set apart to her, so as to adjoin one-half of the remaining part of said land to be allotted to her in fee, so that it all might lie in one body, etc. And further prayed that said homestead tract as described in exhibit 'A,' setting out same in metes and bounds, be set apart to her for and during her natural life, etc.

"A jury having been waived, the cause was submitted to the court upon

the law and fact, and judgment was rendered in substance as follows: That said Peter Bolinger survey contained 332 acres of land, which was the separate property of appellee's husband, R. S. Hough, at the time of his death; that of said 332 acres of land the appellee, Nettie Hough, should hold as her homestead 200 acres, which 200 acres were designated and surveyed out in accordance with the statute since the institution of this suit, leaving 132 acres subject to partition between appellants, who were entitled to one-half the same, and the appellee, who was entitled to the other half. Commissioners were appointed to report at the following term of court and were directed to partition only the said 132 acres, setting apart under the statute one-half the same in value to these appellants jointly, and the remaining half to appellee. Which judgment was duly excepted to at the time it was rendered in open court, and notice of appeal given to this honorable court. And these appellants duly filed their appeal bond, assigned errors, and in all things duly perfected their appeal to this court.

"The cause was tried upon an agreed statement of facts, there being no issue or conflict in the testimony whatever, and the following is a statement of all the material evidence bearing in any manner upon the questions raised in this appeal:

"Appellee Nettie Hough married R. S. Hough, and they lived together as man and wife until August 25, 1885, when R. S. Hough died. No child or children were born to them, and the said R. S. Hough left no child nor the descendant of any child surviving him, but left as his heirs at law appellee, Nettie Hough, his wife, and ——— Hough, his mother, Martha M. Shippey, a sister, and his two brothers, Norman F. Hough and George W. Hough, these being all the brothers and sisters that are living, his father being dead. The mother of R. S. Hough conveyed all her interest by warranty deed in the estate of R. S. Hough to appellant, Martha M. Shippey. Prior to appellee's marriage with R. S. Hough, the 332 acres of land known as the Peter Bolinger survey was patented to R. S. Hough and was his separate property. Appellee and her husband took possession of said tract of land in June, 1873, and lived upon it continuously as their homestead until the death of R. S. Hough, at which time some thirty or forty acres of it was in cultivation, the balance not being in cultivation nor under fence. Since the death of R. S. Hough appellee resided on same continuously until January, 1895; that the house burned down which she and her husband, R. S. Hough, lived in, some six or eight years ago, and appellee received the insurance money on the house and contents, to the extent of about $1000, and built another house at or near the same place on said 332 acres of land that the first was built; also built a cistern, barn, and other outhouses, and inclosed the entire tract of 332 acres with cedar posts and barbed wire fence, placed all of it except nine or ten acres in a good state of cultivation by tenants, and using the same as her own and paid taxes in her name to this date. Prior to the filing of this suit said appellee had never designated any particular portion of said 332 acres as a homestead, and that said R. S.

Hough prior to his death had never designated any particular portion of said 332 acres as his homestead. Appellee has continued to use the property as her homestead ever since the death of Hough; has acquired no other, etc. It is agreed that all the other tracts of land sued for were the property of appellee, being community property between her husband and self; that since the institution of this suit and shortly after it was filed appellee designated and caused to be surveyed as and for her homestead, out of the said Peter Bolinger survey, and including said homestead improvements, 200 acres in area, being the same described in her answer as exhibit 'A' and set forth specifically in said agreed statement of facts by metes and bounds. This survey was made without any notice to appellants in this cause, and was a voluntary survey which appellee ordered and caused to be made for her homestead, and was made regardless of the interests of the parties to this suit, and was made so as to include in the 200 acres the best part of said land, and the remaining land left was intrinsically worth less in value per acre than that included in the homestead, and owing to the shape of the land that was left it was still further decreased in value, said survey of the homestead having been made without regard to the effect it would have on the remaining land.

"The following rough sketch will approximately show the survey of the homestead and the shape of the land remaining, one-half of which, only, was awarded to these appellants:

"It was admitted that the appellants were entitled, as the heirs at law of R. S. Hough, to an undivided one-half interest in his separate property; and it was further admitted that R. S. Hough during his lifetime had never designated any particular homestead on said 320 acres of land, and had never had any occasion to do so, but had simply improved a portion of it and lived upon it and claimed same as his homestead, and was so living there at the time of his death."

It is proper to state further that the decree adjudged the plaintiffs to be the owners of an undivided one-half interest in 200 acres set apart to the defendant as her homestead, subject only to her right to use the entire 200 acres as a homestead; and it provides, in the event of her death or abandonment of the homestead, that the same shall be subject to partition.

*Opinion.*—It is contended by counsel for appellants that appellee's homestead right, as against the claim of appellants, is limited to the thirty or forty acres of land in actual use by appellee and her husband, at the time of the latter's death.

We ruled against this contention on a former appeal in this case, and we see no reason to change the ruling then made. Hough v. Shippey, 40 S. W. Rep., 332. It can not be denied that if Hough was still alive and asserting a homestead right he could hold 200 acres of the land as a homestead, although he actually used less than that quantity; and we held on the former appeal, and still hold, that the right of the surviving spouse in the homestead is as great as that of husband and wife, if both were asserting the homestead exemption.

The further proposition is submitted, that if appellee had the right to select 200 acres as her homestead, she had not the right to run zigzag lines, leaving the remainder of the survey irregular in form, and secure thereby the most valuable part of the survey as a homestead.

We must also rule against this contention. The right to select the homestead is not affected by the fact that the better land has been selected and that of less value left subject to the claims of others. The law does not require the homestead to be in any particular form, and the right of selection necessarily means the right to take such as may be desired; and as persons having the right to select usually take that believed to be the best, it is a reasonable supposition that in allowing the right to select the homestead, it was in contemplation of the Legislature that the best land would be selected for homestead purposes.

Without further discussion we cite: Ball v. Lowell, 56 Texas, 583; Cervinka v. Dyches, 32 S. W. Rep., 321; Gillim v. Null, 58 Texas, 304; Railway v. Winter, 44 Texas, 614.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.