The **WESTERN FIRE INSURANCE COMPANY,** Appellant,

v.

Charlotte **SANCHEZ,** Appellee.

No. 12–83–0098–CV.

Court of Appeals of Texas, Tyler.

May 3, 1984.

Rehearing Denied June 21, 1984.

Robert R. Biechlin, Jr. Thornton, Summers, Brock & Biechlin, San Antonio, for appellant.

Fred Clark, New Braunfels, for appellee.

McKAY, Justice.

This is an appeal from a judgment in favor of appellee, Charlotte Sanchez (Charlotte), and against appellant, The Western Fire Insurance Co., in the amount of $40,-112, for damages under a fire insurance policy.

The facts were stipulated and agreed to by the parties. On January 30, 1980, appellant issued a fire insurance policy to Charlotte, providing coverage in the amount of $64,000 for a house then under construction. The lots upon which the house was built were paid for by Charlotte from her separate funds, but the conveyance of the lots by warranty deed was to Delfin Sanchez (Delfin), Charlotte's husband, and to Charlotte. However, Charlotte did not authorize nor direct that Delfin be included as a grantee, and she did not intend a gift to Delfin of any interest in the lots. The house was constructed and paid for by Charlotte from proceeds from the sale of another house received by her in a divorce settlement. Delfin and Charlotte's father and uncle performed services and labor in the construction of the house, but they were not paid for such services and labor, and the father and Delfin did not expect to be paid. Delfin did not contribute any funds toward the purchase of the lots or toward the construction of the house, but contributed only labor in its construction. Delfin claimed no interest in the proceeds from the sale of the house in Charlotte's divorce settlement.

It was stipulated that any enhancement in value by way of improvements made to the separate property of Charlotte by the community estate of Charlotte and Delfin does not exceed the benefits derived by their community estate from such separate property of Charlotte by living in the residence, and Charlotte and Delfin occupied the house as a permanent residence and homestead prior to the fire which occurred on December 9, 1980. The fire that burned the residence was the result of the intentional act or acts of Delfin alone, and he claims no interest in the lots or the improvements constructed thereon. He claims no equitable right of reimbursement for labor done in the construction of improvements on the lots.

The sum required to repair or replace the residence to its same condition was stipulated to be $36,800.

The trial court made a finding of fact that the policy did not insure any homestead interest of Charlotte or Delfin. Conclusions of law were made that (1) the acts of Delfin in burning the insured property is not imputed to Charlotte as she is not vicariously liable for the intentional tort of Delfin; (2) the insurance proceeds stand in the place of the interest owned by Charlotte, the purchaser of the policy, and do not inure to the benefit of Delfin, and he has no interest in such proceeds; (3) as a stranger to the policy, Delfin is not entitled to any interest in the proceeds where the terms of the insurance policy limit coverage to the interest of the named insured; (4) the insurance policy did not purport to insure the homestead interest of either Charlotte, the sole named insured, or Delfin; (5) a husband's homestead interest is not sufficient to bar recovery by his wife where she is the sole named insured and the dwelling destroyed by the husband is her separate property; and (6) public policy of this state, on the basis that one should not profit from his own wrongdoing, bars a recovery under an insurance policy where the loss occurs as a result of fraud or

intentional acts of the insured; such public policy also bars a recovery by an innocent joint-owner where the property is intentionally destroyed by another joint-owner; plaintiff Charlotte should recover on the fire policy because Delfin owned no interest in the destroyed property or the insurance proceeds, was not an insured, and the basis for the policy, to-wit: to prevent profit from wrongdoing, is not applicable.

Appellant's first point asserts that the trial court erred in rendering judgment for Charlotte on the fire policy because she is barred from recovery in that her husband Delfin owned a homestead interest in the insured property, and he intentionally burned the house.

■ It is settled in Texas that a homestead may be the separate property of either the husband or the wife, or their community property. The court said in the old case of *Ball, Hutchings & Co. v. Lowell,* 56 Tex. 579, 583 (1882):

> A homestead may be the separate property of the husband, the community property of the husband and wife, or the separate property of the wife.... While both husband and wife live and occupy it as such, it is in fact and law the homestead of the family.

See *Crowder v. Union National Bank of Houston,* 114 Tex. 34, 261 S.W. 375, 377 (Tex.Comm'n App.1924, opinion adopted); *Haynes v. Vermillion,* 242 S.W.2d 444, 446 (Tex.Civ.App.—Fort Worth 1951, writ ref'd n.r.e.); *Elliott Lumber Co. v. Mitchell,* 241 S.W. 221, 222 (Tex.Civ.App.—Fort Worth 1922, *reformed and affirmed* 254 S.W. 935).

■ It is also well established that a homestead right is an estate in land. *O'Neil v. Mack Trucks, Inc.,* 542 S.W.2d 112, 114 (Tex.1976); *Norman v. First Bank & Trust, Bryan,* 557 S.W.2d 797, 802 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.).

The homestead right of the survivor under TEX. CONST. art. XVI, § 52 has been held to be a right "in the nature of a legal life estate or life estate created by operation of law." *Williams v. Williams,* 569 S.W.2d 867, 869 (Tex.1978); *Sparks v. Robertson,* 203 S.W.2d 622, 623 (Tex.Civ.App. —Austin 1947, writ ref'd); *White v. Blackman,* 168 S.W.2d 531, 533 (Tex.Civ.App.— Texarkana 1942, writ ref'd w.o.m.).

It is said in the case of *Sargeant v. Sargeant,* 118 Tex. 343, 15 S.W.2d 589, 593 (Tex.Comm'n App.1929, opinion adopted): "... it is clear to us that the homestead right in land contains every element of a life estate, and is therefore at least in the nature of a legal life estate, or, in other words, a life estate created by operation of law." See *Fiew v. Qualtrough,* 624 S.W.2d 335, 337 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.).

The U.S. Supreme Court in *United States v. Rodgers,* 461 U.S. 677, 103 S.Ct. 2132, 2138, 76 L.Ed.2d 236 (1983), in interpreting Texas law on homesteads, said:

> The effect of these provisions in the Texas Constitution [Art. XVI, §§ 50, 52] is to give each spouse in a marriage a separate and undivided possessory interest in the homestead, which is only lost by death or abandonment, and which may not be compromised either by the other spouse or by his or her heirs. It bears emphasis that the rights accorded by the homestead laws vest independently in each spouse regardless of whether one spouse, or both, actually owns the fee interest in the homestead. Thus, ... it may be said that the homestead laws have the effect of reducing the underlying ownership rights in a homestead property to something akin to remainder interests and vesting in each spouse an interest akin to an undivided life estate in the property.... [T]he Texas homestead right is not a mere statutory entitlement, but a vested property right. As the Supreme Court of Texas has put it, a spouse 'has a vested estate in the land of which she cannot be divested during her life except by abandonment or a voluntary conveyance in the manner prescribed by law.'

See *Paddock v. Siemoneit,* 147 Tex. 571, 585, 218 S.W.2d 428, 436 (1949); and *Woods*

*v. Alvarado State Bank,* 118 Tex. 586, 19 S.W.2d 35 (1929), at p. 36:

> We have concluded that in this state the homestead is to be regarded as an estate created not only for the protection of the family as a whole, but for the units of the family at the time of its dissolution ... as distinguished from a mere privilege accorded the head of the family for the benefit of the family as a whole.

See 28 TEX.JUR.2d *Homestead* § 6 (1961).

█ We conclude that Delfin, the husband, having a homestead right in the house he intentionally burned, had an estate in land, and that benefit of the homestead law vested in him independently regardless of the ownership of the house being the separate property of his wife Charlotte. Delfin and Charlotte were living together in the house as husband and wife at the time of the fire, and the record shows they were continuing to live together as husband and wife at the time of trial.

In *Jones v. Fidelity & Guaranty Insurance Corp.,* 250 S.W.2d 281 (Tex.Civ.App.—Waco 1952, writ ref'd), the husband and wife insured their house in Corsicana where they lived together. The house was community property. The wife separated from the husband, moved to Dallas where she was granted a divorce, but the divorce decree made no disposition of the community property of the parties. After the divorce was granted, and while the insurance policy as originally issued in both names was in force, the ex-husband intentionally burned the insured house. The wife had no knowledge of or connection with the burning of the house. The divorced wife brought suit to recover on the policy, and she contended that the act of her former husband in burning the house prevented him from any right of recovery, but that his wrongful conduct "should not be imputed to her so as to deprive her from recovering for one-half of the loss," and since the divorce decree made no disposition of the property, she and her former husband owned the same as tenants in common when the fire occurred. The court held "that the act of arson on the part of the

former husband rendered the entire policy here sued upon void" and deprived the former wife of any right of recovery.

While the facts in *Jones v. Fidelity,* above cited, do not conform to those in the instant case, we believe the rule of law applied there is applicable here. The Jones case was cited and followed by *Bridges v. Commercial Standard Insurance Co.,* 252 S.W.2d 511, 512 (Tex.Civ.App.—Eastland 1952, no writ), with the following language:

> Where two persons have a joint interest in property which is destroyed by being intentionally burned by one of them, the other, though innocent, cannot recover on a fire insurance policy. The rule has been applied to an innocent wife when insured community property was willfully burned by a divorced husband.... It has been applied to partners.
>
> .   .   .   .   .
>
> The land to which the house was moved was the separate property of Mrs. Bridges. The house, which was the separate property of Mr. Bridges, was moved by him onto the land of his wife and occupied by them as their home. Thereupon, in the absence of an intention or agreement to the contrary of which there is no evidence, the house became the separate property of the wife. (Cites omitted.) The house became a part of the land and belonged to the owner of the land. (Cite omitted.) However, for present purposes *we shall assume that Bridges had an insurable interest in the house because it was his homestead.* (Cite omitted.) ... *The husband's homestead interest was owned jointly with his wife, who willfully burned it, and he, therefore, cannot recover on the property.* (Emphasis added.)

See *Doss v. Roberts,* 487 S.W.2d 839, 841 (Tex.Civ.App.—Texarkana 1972, writ ref'd n.r.e.).

█ It is our conclusion that it is against public policy in Texas to permit a recovery on a fire insurance policy where one who owns a homestead interest in the insured property intentionally sets fire to

and burns such property. *Aetna Casualty and Surety Co. v. Clark,* 427 S.W.2d 649, 653 (Tex.Civ.App.—Dallas 1968, no writ); *Greenfeld v. San Jacinto Ins. Co.,* 319 S.W.2d 134, 136 (Tex.Civ.App.—Houston 1958, no writ); *Bridges v. Commercial Standard Ins. Co., supra; Jones v. Fidelity & Guaranty Ins. Corp., supra.* See TEX. PENAL CODE ANN. §§ 28.03 and 28.05 (Vernon 1974). We sustain appellant's first point. We do not reach appellant's other points.

Judgment of the trial court is reversed, and judgment is here rendered that appellee Charlotte Sanchez take nothing.