Betty KULUBIS, Appellant,

v.

TEXAS FARM BUREAU UNDERWRITERS INSURANCE COMPANY, Appellee.

No. 14298.

Court of Appeals of Texas, Austin.

Oct. 2, 1985.
Rehearing Denied Nov. 20, 1985.

Charles David Crook, Law Offices of Jim Arnold, Jr., Austin, for appellant.

Jan Soifer, Brown, Maroney, Rose, Barber & Dye, Austin, for appellee.

Before SHANNON, C.J., and BRADY and GAMMAGE, JJ.

SHANNON, Chief Justice.

Betty Kulubis sued Texas Farm Bureau Underwriters Insurance Company in the district court of Travis County for the proceeds of a homeowners insurance policy insuring a mobile home. After trial to a jury, the district court rendered a take-nothing judgment. This Court will affirm the judgment.

Betty Kulubis and John Kulubis married in 1971. In 1973, Mrs. Kulubis' parents gave the couple a mobile home. Thereafter, the couple purchased a homeowners insurance policy from Texas Farm Bureau which, among other things, insured against losses from fire and malicious mischief. Both Betty and John Kulubis were named insureds on the policy.

During the early summer of 1982, the parties separated and Mrs. Kulubis filed suit for divorce. Thereafter, on June 25, 1982, John Kulubis telephoned Texas Farm Bureau and ordered the insurance policy cancelled, but the insurance company refused to accept the oral cancellation. John then went on a rampage destroying personal property within and outside the mobile home. On the next day, Kulubis set fire to the mobile home. The fire totally destroyed the mobile home and all of the personal property within. In torching the mobile home and the other property, John Kulubis was not acting for the purpose of collecting the proceeds from the insurance policy.

Sometime after the fire, the parties were divorced. By the terms of the judgment of divorce, Mrs. Kulubis was awarded all of the insurance proceeds, if any, payable under the insurance policy.

Texas Farm Bureau denied liability and refused to pay Mrs. Kulubis' claim.

Mrs. Kulubis sued on the policy pleading that she was entitled to recover the proceeds of the policy for the loss of the mobile home and its contents which loss resulted from "fire, vandalism, and malicious mischief."

The insurance company defended the suit pleading affirmatively that the loss was caused by John Kulubis, a co-insured under the policy who intentionally set fire to and destroyed the mobile home and its contents, and that, accordingly, Mrs. Kulubis was barred from recovering on the policy.

In response to the court's charge, the jury answered that John Kulubis intentionally destroyed the mobile home and its contents. The district court, accordingly, rendered judgment that Mrs. Kulubis take nothing.

By her first point of error, Mrs. Kulubis claims error in the court's judgment for the reason that she "did not have knowledge of, nor participate in, the destruction of the property." The point will be overruled.

The fact that Mrs. Kulubis did not know nor participate in the burning of the property has no bearing upon whether she is entitled to recover the proceeds of the policy. The rule in this State since at least 1952 has been that an insured's intentional destruction of property bars recovery on the policy by his co-insured. *Jones v. Fidelity and Guaranty Insurance Co.,* 250 S.W.2d 281 (Tex.Civ.App.1952, writ ref'd); *Bridges v. Commercial Standard Insurance Co.,* 252 S.W.2d 511 (Tex.Civ.App. 1952, no writ); and *Western Fire Insurance Co. v. Sanchez,* 671 S.W.2d 666 (Tex.

App.1984, writ ref'd n.r.e.). It is undisputed that John Kulubis is an insured on the policy and the jury found that he intentionally destroyed the mobile home and its contents.

■ Upon authority of opinions from courts of other states, Mrs. Kulubis suggests that *Jones v. Fidelity and Guaranty Insurance Co., supra; Bridges v. Commercial Standard Insurance Co., supra;* and *Western Fire Insurance Co. v. Sanchez, supra,* were wrongly decided. She invites this Court to abandon the holdings of the courts of this State and follow in the footsteps of the courts of other states. This Court respectfully declines Mrs. Kulubis' bid and will adhere to the holdings of the courts of this State. The Supreme Court of Texas refused application for writ of error in *Jones v. Fidelity and Guaranty Insurance Co., supra.* When the Supreme Court refuses an application for writ of error, that Court gives full approval to the opinion of the Court of Appeals and makes that opinion as authoritative as one of its own opinions. *Biggers v. Continental Bus System,* 157 Tex. 351, 303 S.W.2d 359, 364 (1957). Re-examination of an issue, raised and determined in a Court of Appeals' opinion in which an application for writ of error has been refused, lies solely within the province of the Supreme Court. *Humble Oil & Refining Co. v. State,* 158 S.W.2d 336, 342 (Tex.Civ.App.1942, writ ref'd).

In *Sanchez,* the Supreme Court of Texas very recently had the opportunity to re-examine and, if it chose, to change the rule in *Jones, supra.* Instead, the Supreme Court refused the application for writ of error with the notation "no reversible error."

Mrs. Kulubis has two other points of error, neither of which is meritorious and each is overruled.

By rendering judgment for Texas Farm Bureau, the district court applied law long approved by the Supreme Court. The duty of this Court, of course, is to do likewise. The judgment is affirmed.

GAMMAGE, Justice, dissenting.

I respectfully dissent.

Betty Kulubis brought this action for breach of contract to collect the proceeds of a standard Texas homeowners insurance policy, issued by the Farm Bureau. Pursuant to Rule 378, Tex.R.Civ.P.Ann. (1985) the parties entered into the following agreed statement:

Betty Kulubis and John Kulubis were married in 1971 following John's service as a helicopter mechanic and door gunner in Vietnam. In 1973, Betty's parents, Carl and Betty Dittmar, purchased a mobile home and gave it to John and Betty. John and Betty purchased a standard homeowner's insurance policy, including coverage for loss by fire and malicious mischief, from Defendant. That policy was in full force and effect on June 26, 1982. Both John and Betty were named insureds in that policy.

During the spring of 1982, John Kulubis began a course of extreme violence and abuse toward Betty. His actions included the beating and severe injury of Betty, firing of gunshots above Betty's head while she cringed in their bedroom, attempting to force Betty to pull the trigger on the gun which he had turned toward himself, and threatening to hire other men to rape her. When Betty could not stand this any longer, she and their son Johnny left. She filed suit for divorce and obtained a temporary restraining order and order of temporary conservatorship for Johnny.

Immediately thereafter, on June 25, 198[2], John called Defendant insurance company (Appellee) and ordered the policy cancelled. These actions were ineffectual, however, as the company refused to accept an oral cancellation. John Kulubis then proceeded to destroy all of the family's belongings. He beat his motorcycle with an axe; rammed his pickup truck into the garage; fired a shotgun repeatedly inside the home, destroying the television set and other appliances and furniture; and smashed the washer, dryer, freezer, car, and pickup truck with

an axe. On June 26, he set a fire which totally destroyed what remained of the mobile home, garage, and contents. He then placed the shotgun in his mouth and pulled the trigger; miraculously, he survived.

Betty Kulubis had no knowledge of, or participation in, any of the foregoing property destruction. The trial court specifically found that, in causing the loss to the property in question, John Kulubis was not acting for the purpose of collecting the insurance proceeds thereupon.

The policy required submission of proof of loss within 91 days of a loss. Within this 91-day period, however, Appellee denied all liability under the policy and refused to pay Appellant's claim. The actual cash value of the insured property at the time of the loss was $21,000.00.

John and Betty Kulubis were divorced on December 17, 1982. The divorce decree awarded the mobile home, its contents, and any insurance proceeds payable thereupon to Betty Kulubis as her sole and separate property. John Kulubis has no interest whatsoever in these insurance proceeds.

At the conclusion of the trial, the jury found that John Kulubis intentionally destroyed the insured property. The jury further found that the Dittmars did not intend to make a gift of the mobile home to Betty Kulubis alone. Based upon these findings, the trial court entered a take-nothing judgment in favor of the Farm Bureau. Betty Kulubis contends that the trial court erred in granting this judgment, because she had no knowledge of, nor did she participate in, the destruction of the property.

The Farm Bureau urges this Court to decide this case on the rule prescribed in *Jones v. Fidelity and Guaranty Insurance Corp.*, 250 S.W.2d 281 (Tex.Civ.App. 1952, writ ref'd): An innocent co-insured may not recover under a casualty insurance policy when another co-insured has intentionally caused the destruction of the insured property. *See also Western Fire Insurance Co. v. Sanchez*, 671 S.W.2d 666 (Tex.App.1984, writ ref'd n.r.e.); *Bridges v. Commercial Standard Insurance Co.*, 252 S.W.2d 511 (Tex.Civ.App.1952, no writ). Analysis of these authorities reveals that this rule is grounded in the public policy concept that *a wrongdoer* must not, to any extent or in any manner, benefit from *his wrongful acts*. *See* 5 Appleman, Insurance Law and Practice, § 3113 (1970). *See also Insurance Law: Innocent Spouse's Right to Recover in Arson Cases*, 17 Wake Forest L.Rev. 1022, 1034 (1981).

In the present case, it is expressly agreed that John Kulubis has no interest in Betty Kulubis' portion of the insured property or the insurance proceeds. In the case before us, the wrongdoer, John Kulubis, was under a restraining order pending divorce. He unsuccessfully attempted to cancel the policy of insurance on the couple's property in an apparent effort to deprive the innocent party, Betty Kulubis, of insurance proceeds on property he intended to destroy. Undeterred, he proceeded to destroy the property anyway. In the subsequent judgment for divorce, Betty Kulubis was purportedly awarded all interest in the insured property as her sole and separate property, depriving John Kulubis of any benefit he might to any extent or in any manner have otherwise received.

The gift of the mobile home to both John and Betty resulted not in community ownership, but in their ownership of the property as tenants in common, each with an undivided one-half interest. *Arnold v. Leonard*, 114 Tex. 535, 273 S.W. 799 (1925). Betty Kulubis therefore cannot be entitled to more than one-half of the proceeds from the insurance on the mobile home, despite the property division in the judgment of divorce. We must presume that the remainder of the insured property was community property, of which Betty Kulubis owned only one-half at the time the property was destroyed. Tex.Fam.Code Ann. § 5.02 (1975).

The Supreme Court of our neighboring state of New Mexico, in *Delph v. Potomac*

*Insurance Company,* 95 N.M. 257, 620 P.2d 1282 (1980), a case in which the facts are strikingly similar to those of this case, reasoned that a wrongdoing husband's fraud could not be attributed or imputed to his innocent wife without unjustly imputing responsibility for his act to the wife. This reasoning has also been followed in a number of other jurisdictions.[1]

In the case before us, where a wrongdoing co-insured destroys property for the purpose of depriving the innocent co-insured of the benefit of either the property or insurance proceeds resulting from its loss, the rule of *Jones v. Fidelity and Guaranty Insurance Corp., supra,* has no proper application. While the rule implicitly creates a presumption that the wrongdoer may benefit by fraud and collusion or otherwise, I would hold such presumption to be rebuttable. The undisputed facts of this case demonstrate that no such danger exists here.

The public policy goal underlying the rule would not be furthered by applying the rule to this case, and to do so produces an unjust and unconscionable result. "But just as the clavicle in the cat only tells of the existence of some earlier creature to which a collar-bone was useful, precedents survive in the law long after the use they once served is at an end and the reason for them has been forgotten. The result of following them must often be failure and confusion from the merely logical point of view." Holmes, The Common Law, Lecture I, at 35 (1881).

To apply the *Jones* rule here we must ignore the reasoning and purpose behind it. We must also ignore the agreed facts of this case and effectively accomplish for the wrongdoer the evil he intended to do; inflicting on Betty Kulubis the injury he intended to inflict by depriving her of the insurance protection from injury for which she has paid. We should acknowledge reality and decide such cases upon their own facts. Arbitrary application of a rule with disregard for its underlying purpose and the peculiar circumstances of a particular case can, and here does, result in injustice. Rules limiting or precluding a recovery where it would otherwise exist should be founded on reason and justice, not on the rigid pursuit of a principle which does not fit the facts of the case under consideration. For these reasons, I am unable to concur in the result reached by the majority and would render judgment that Betty Kulubis recover one-half of the insurance proceeds on the destroyed property.

**1.** *See:* Georgia: *Richards v. Hanover Ins. Co.,* 250 Ga. 613, 299 S.E.2d 561 (1983); Maryland: *St. Paul Fire and Marine Ins. Co.,* 291 Md. 139, 433 A.2d 1135 (1981); North Carolina: *Lovell v. Rowan Mutual Fire Ins. Co.,* 302 N.C. 150, 274 S.E.2d 170 (1981); Alabama: *Hosey v. Seibels Bruce Group, South Carolina Ins. Co.,* 363 So.2d 751 (1978); Maine: *Hildebrand v. Holyoke Mutual Fire Ins. Co.,* 386 A.2d 329 (1978); Delaware: *Steigler v. Insurance Co. of North America,* 384 A.2d 398 (1978); New Jersey: *Howell v. Ohio Casualty Insurance Company,* 130 N.J.Super. 350, 327 A.2d 240 (1974); New Hampshire: *Hoyt v. New Hampshire Fire Ins. Co.,* 92 N.H. 242, 29 A.2d 121 (1942). *See also Insurance Law: Innocent Spouse's Right to Recover in Arson Cases, supra.*