ACCEPTED
04-14-00812-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
2/10/2015 8:28:48 AM
KEITH HOTTLE
CLERK

No.  04-14-00812-CV

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
02/10/2015 8:28:48 AM
KEITH E. HOTTLE
Clerk

IN THE COURT OF APPEALS
FOURTH COURT OF APPEALS DISTRICT
OF TEXAS AT SAN ANTONIO

IN THE ESTATE OF CONSUELLA PERKINS ULBRICH

From the Probate Court No. One, Bexar County, Texas
Trial Court Cause No. 2011-PC-0686
Honorable Polly Jackson Spencer, Judge Presiding

APPELLANT'S BRIEF

Respectfully submitted,

Philip M. Ross
State Bar No. 017304200
1006 Holbrook Road
San Antonio, Texas 78218
Phone: 210/326-2100
Email: ross_law@hotmail.com

ORAL ARGUMENT REQUESTED

By:  /s/  Philip M. Ross
Philip M. Ross
Attorney for Appellant
Douglas J. Ulbrich

IDENTITY OF PARTIES AND COUNSEL

Party:                                    Counsel:

Douglas J. Ulbrich                        Philip M. Ross
                                          State Bar No. 17304200
Appellant                                 1006 Holbrook Road
                                          San Antonio, Texas 78218
                                          Phone: 210/326-2100
                                          Email: ross_law@hotmail.com


Bob Hope, Darlene Wilson                  Kristine Arlitt
and Debra Bird                            206 Locust Street
                                          San Antonio, Texas 78212
Appellees                                 Phone: 210/281-6101
                                          FAX: 210/281-6105
                                          Email: kristine@arlittlaw.com

i

TABLE OF CONTENTS

Page

IDENTITY OF PARTIES AND COUNSEL ..………………….……    ii

TABLE OF CONTENTS ……………………………………………    iii

INDEX OF AUTHORITIES …………………………………..    iv

STATEMENT OF THE CASE ………………………… ……….    1

STATEMENT OF JURISDICTION ………………………………..    2

STATEMENT REGARDING THE RECORD…………………………    2

ISSUES PRESENTED …………………………………………………..    2

SUMMARY JUDGMENT EVIDENCE …...............................................    3

STATEMENT OF FACTS ………………………………………..    5

STANDARD OF REVIEW …............................................………    10

SUMMARY OF ARGUMENT ………………………………….    10

ARGUMENT AND AUTHORITIES ………………………………..    12

1    Whether the trial court granted summary judgment in
     error, when there were genuine issues of material fact
     as to each element of Douglas' claim to set aside his
     ranch as his rural homestead? …...............................................    12

2    Whether the trial court erred in finding as matters of law
     that the homestead of the Decedent was 3939 Starhill,
     San Antonio, Texas, when there were genuine issues of
     material fact that the Decedent's homestead was the
     family ranch in Medina County? …...........................................    19

3      Whether the trial court erred in finding as a matter of law that the Texas Constitution's Survivor Homestead granted to Douglas Ulbrich was 3939 Starhill, San Antonio, Texas, when there were genuine issues of material fact that the Decedent's homestead was the family ranch in Medina County? …................................................................ 20

4      Whether the trial court erred in finding as a matter of law that Douglas Ulbrich voluntarily abandoned and discontinued use of the Texas Constitution's Survivor Homestead located at 3939 Starhill, San Antonio, Texas, when there were genuine issues of material fact that the Decedent's homestead was the family ranch in Medina County? …........................................................................... 21

5      Whether the trial court erred in finding as a matter of law that Douglas Ulbrich cannot transfer the Texas Constitution's Survivor Homestead to any other property? …. 32

CONCLUSION and PRAYER…………………….…………………….. 45

CERTIFICATION …………………………………………………..… 45

CERTIFICATE OF COMPLIANCE ..…………………….…....…. 45

CERTIFICATE OF SERVICE …………………….……....…. 46

# INDEX OF AUTHORITIES

CASES                                                                     PAGE(S)

*Andrews v. Security Nat. Bank of Wichita Falls*
50 S.W.2d 253 (Tex. 1932) …...........................................................     35

*Bahn v. Starcke*
34 S.W. 103 (59 Am. St. Rep. 40) …..................................................     37

*Blake v. Fuller*
184 S.W.2d 148 (Tex.Civ.App. 1944) …..............................................     31, 33

*Blum v. Gaines*
57 Tex. 119 (1882) …......................................................................     25, 38

*Brown v. Reed*
48 S.W. 537 (Tex.Civ.App.1898, writ ref'd) …....................................     24

*Carson v. McFarland*
206 S.W.2d 130
(Tex.Civ.App.--San Antonio 1947, writ ref'd) …................................     12

*Casso v. Brand*
776 S.W.2d 551 (Tex. 1989) …........................................................     10

*Clift v. Kaufman & Runge*
60 Tex. 64 (1883) …......................................................................     24

*Cobbs v. Coleman*
14 Tex. 594 (1855) …....................................................................     12

*Cocke v. Conquest*
35 S.W.2d 673 (1931) …............................…...............................     29

*De Ayala v. Mackie*
193 S.W.3d 575 (Tex 2006) …........................................................     14, 15

| CASES | PAGE(S) |
|---|---|

*Foley v. Holtkamp*
66 S.W. 891 (Tex.Civ.App.Galveston, 1902, writ ref.)  …........... 30

*George v. Taylor*
296 S.W.2d 620
(Tex.Civ.App.--Fort Worth 1956, writ ref'd n.r.e.)  …................ 25

*Good v. Good*
293 S.W. 621, 623 (Tex.1927)  …................................................ 25

*Hickman v. Hickman*
149 Tex. 439, 234 S.W.2d 410 (1950)  …................................... 12

*Hill v. Aldrich*
242 S.W.2d 465
(Tex.Civ.App.--San Antonio 1951, writ dism'd)  …............... 25

*Hunter v. Clark*
687 S.W.2d 811 (Tex.App. —San Antonio 1985)  …........... 24, 26

*In the Estate of Consuella Perkins Ulbrich, deceased*
04-12-00514-CV
(Tex. Civ. App. - San Antonio, January 15, 2014)  ..   13, 15, 16, 18, 19

*Jenkins v. Hutchens*
287 S.W.2d 295
(Tex.Civ.App.--Eastland 1956, writ ref'd n.r.e.)  …...................... 24

*Kessler v. Draub*
52 Tex. 575 (36 Am. Rep. 727)  …................................................ 28

*Lehmann v. Har-Con Corp.*
39 S.W.3d 191, 192 (Tex. 2001)  …........................................... 14

*Lindsley v. Lindsley*
139 Tex. 512, 163 S.W.2d 633 (1942)  …................................... 25

v

CASES                                                                          PAGE(S)

*Provident Life & Accident Insurance Co. v. Knott*
128 S.W.3d 215-216 (Tex. 2003) …........................................     10

*Majeski v. Estate of Majeski*
163 S.W.3d 102 (Tex. App. - Austin 2005, no pet.) …..............  16, 17, 18

*McGaughey et al. v. American Nat. Bank*
92 S.W. 191, , writ denied …....................................................     31

*Petrus v. Cage Brothers*
128 S.W.2d 537
(Tex.Civ.App.--San Antonio 1939, writ ref'd) …......................   *25, 26*

*Pressley's Heirs v. Robinson*
57 Tex. 453, 460 (1882) …........................................................     25

*Rancho Oil Co. v. Powell*
175 S.W.2d 960 (1943) …..........................................................     25

*Ratliff v. Smith*
178 S.W.2d 138, 141 (Tex.Civ.App. 1943) …...........................     41

*Salmons v. Thomas*
62 S.W. 102 (1901, no writ) …...................................................     25

*Sargeant v. Sargeant*
19 S.W. 382 (Tex.Civ.App.--Fort Worth 1928, no writ) …...........     25

*Schneider v. Bray*
59 Tex. 668 (1883) …...............................................................     29

*Shippey et al. v. Hough*
47 S.W. 672 (Civ. App. Texas 1898), writ refused …..................     32

*Simank v. Alford*
441 S.W.2d 234 (Tex.Civ.App. —Austin 1969) …......................   27 28 29

CASES                                                    PAGE(S)

*Sparks v. Robertson*
203 S.W.2d 622 (Tex.Civ.App. Austin 1947, writ ref'd) …........    26

*Spencer v. Schell*
173 S.W. 867 (1915) …...............................................    24

*Tiboldi v. Palms*
78 S.W. 726, aff'd 79 S.W. 23 (1904) …....................................    25

*Trawick v. Harris*
8 Tex. 312 (1852) …...............................................    29

*White v. Blackman*
168 S.W.2d 531
(Tex.Civ.App. Texarkana 1942, writ ref'd w. o. m.) …..............    26

*Wicker v. Rowntree*
185 S.W.2d 150
(Tex.Civ.App.--Amarillo 1945, writ ref'd w.o.m.) …..............    24

*Williams v. Estate of Williams*
548 S.W.2d 492 (Tex.Civ.App. —Austin 1977) …...................    42

*Williams v. Williams*
569 S.W.2d 867 (Tex. 1978) …...............................................    26

*Woods v. Alvarado State Bank*
19 S.W.2d 35 (1919) …...............................................    29, 36, 37


STATE STATUTES AND RULES                                 PAGE(S)

Texas Constitution, Sec. 52, Art. 16 …......................................    35

TEX. CONST. art. XVI, § 52 …...............................................    24

Texas Probate Code § 271(b) …...........................    8, 9, 10, 13, 21, 22, 23

STATE STATUTES AND RULES                                    PAGE(S)

Tex.Prob.Code Ann. §§ 271, 272, 283, 284 (1956) …................... 26

Tex.Prop.Code Chapter 41  …...................................................... 8

TRAP Rule 25  …...................................................................... 2

Vernon's Ann.Tex.Const. Art. 16, § 52 (1955)  …....................... 42


TREATISES                                                  PAGE(S)


The Widow's Exemption in Texas, 25 Baylor L.Rev. 346 (1973) .. 26

IN THE COURT OF APPEALS FOR
THE FOURTH DISTRICT OF TEXAS
SITTING AT SAN ANTONIO

IN THE ESTATE OF CONSUELLA PERKINS ULBRICH

On appeal from Probate Court No. One, Bexar County, Texas
Honorable Polly Jackson Spencer, presiding

APPELLANT'S BRIEF

TO THE HONORABLE JUSTICES OF THE FOURTH COURT OF APPEALS:

Now comes, Douglas J. Ulbrich ("Douglas"), and files his brief appealing the Order granting summary judgment entered on November 5, 2014, and in support would show:

## STATEMENT OF CASE

This is an appeal by Douglas J. Ulbrich, who is the surviving spouse of Consuela Perkins Ulbrich, deceased, and the record owner of a 160 acre ranch in Medina County, Texas, which he has designated as his probate homestead. This appeal is from an Order of Judge Polly Jackson Spencer, Probate Court No. 1, Bexar County, Texas granting summary judgment. [CR1 269-270]. The summary

1

judgment, was signed on November 5, 2014. [CR1 269-270]. Ulbrich timely filed a notice of appeal on November 21, 2014. The Clerk's docket sheet is attached at Appendix Tab 1.

## STATEMENT OF JURISDICTION

Douglas files this appeal pursuant to TRAP Rule 25. Douglas submits that timely filed a notice of appeal [CR1 271-273] on November 24, 2014, he requested preparation of the Clerk's Record [CR1 274-276] on November 25, 2014, and he has complied with all conditions precedent to invoking the jurisdiction of the Fourth Court of Appeals.

## STATEMENT REGARDING THE RECORD

The Clerk's Record consisting of two volumes has been filed. There was no Reporter's Record for the hearing on the motion for summary judgment.

## ISSUES PRESENTED

1    Whether the trial court granted summary judgment in error, when there were genuine issues of material fact as to each element of Douglas' claim to set aside his ranch as his rural homestead?

2    Whether the trial court erred in finding as matters of law that the homestead of the Decedent was 3939 Starhill, San Antonio, Texas, when there were genuine

2

issues of material fact that the Decedent's homestead was the family ranch in Medina County?

3	Whether the trial court erred in finding as a matter of law that the Texas Constitution's Survivor Homestead granted to Douglas Ulbrich was 3939 Starhill, San Antonio, Texas, when there were genuine issues of material fact that the Decedent's homestead was the family ranch in Medina County?

4	Whether the trial court erred in finding as a matter of law that Douglas Ulbrich voluntarily abandoned and discontinued use of the Texas Constitution's Survivor Homestead located at 3939 Starhill, San Antonio, Texas, when there were genuine issues of material fact that the Decedent's homestead was the family ranch in Medina County?

5	Whether the trial court erred in finding as a matter of law that Douglas Ulbrich cannot transfer the Texas Constitution's Survivor Homestead to any other property?

SUMMARY JUDGMENT EVIDENCE

1	Homestead Affidavit of Douglas Ulbrich, dated April 11, 2011 [CR1 123];

2	Homestead Affidavit of Douglas Ulbrich, dated January 10, 2012 [CR1 124-127];

3

3    Affidavit of Douglas Ulbrich, dated September 24, 2012 [CR1 173-182];

4    Affidavit of Mary Dahlman, dated December 17, 2012 [CR1 146-151];

5    Affidavit of Al Cargen, dated December 17, 2012 [CR1 134-139];

6    Affidavit of Carolyn Watson, dated December 17, 2012 [CR1 140-145];

7    Formal Bill of Exceptions with exhibits and affidavit, dated 9-24-12 [CR1 156-172];

8    Verified Supplemental Formal Bill of Exceptions w/exhibits dated 10-3-12 [CR1 246-268];

9    Affidavit of Karon Robertson, dated 10-1-10 [CR1 128-130];

10   Affidavit of Gary Neubauer, dated 9-27-10 [CR1 131-133];

11   Homestead photos [CR1 183-245];

12   Community National Bank letter with attachment, dated 12-10-10 [CR1 262-264];

13   Medina County Appraisal District Application for Homestead Exemption 2011 [CR1 253-261]; and

14   Deed to 80 acres from Laverne Raish, dated 2-1-79 [CR1 265-268].

15   Rule 11 agreement, dated August 26, 2014, regarding exempt personal property.  [CR2 25-26].

4

FACTUAL BACKGROUND

Douglas and Consuella Ulbrich were married on October 8, 1966 in Kerr County, Texas. They raised her three children from a prior marriage. Douglas was a rancher and managed a number of cattle ranches and hunting leases. Consuella owned and managed a small chemical company and other businesses. At the time of their marriage they each owned separate property, and they kept separate bank accounts and retirement accounts associated with the businesses they owned and operated prior to and during their marriage.

In August 1973, Douglas and Consuella bought a house at 3939 Starhill in San Antonio. In 1978, Douglas and three of his siblings each inherited a 25% undivided interest in 320 acres of his parents' ranch in Medina County, Texas. In February 1979, Douglas bought his sister Laverne's 25% undivided interest in the ranch. [CR1 124]. In March 1979, Douglas and his other two siblings partitioned their respective ½ undivided interests in the 320 acre ranch. Douglas and Consuella ended up with the 160 acres described in the Partition Deed recorded at Vol. 288, Pages 57-60 filed in the Deed Records of Medina County, Texas on April 5, 1979. [CR1 125].

Although they divided their time between their house in San Antonio and

5

the ranch home in Medina County, they considered the family ranch to be their rural homestead from the time Douglas inherited his share from his parents and purchased his sister Laverne's undivided interest. They spent most of their time at their ranch home. Douglas built an 8' high game fence around the entire 160 acre tract and raised Axis deer. They had a deer hunting operation, farmed, and raised goats. The family rural homestead was a principal source of family income after Douglas retired from his other ranching operations.

Douglas and Consuella planned to build a new home on a knoll with a nice view of the surrounding land, and Douglas cleared about 30 acres for a home site. However, when Consuella became ill towards the end of her life, they spent more of their time in their San Antonio residence, and they never got around to building their dream home at the ranch. Nevertheless, now that Consuella is buried in the Ulbrich family plot in Hondo, Medina County, Douglas still plans to build the hilltop home on the home site that he cleared.

In 1979, Douglas inherited an undivided interest in his mother's two houses in Hondo. He acquired the remaining interest in his mother's houses by gift or purchase from his siblings. One of the houses in Hondo was a rent house and the other was demolished and not rebuilt.

So, at the time of Consuella's death on August 22, 2010, Mr. and Mrs. Ulbrich owned three residences, each of which was a potential homestead. However, they considered their 160 acre family ranch home to be their rural homestead, and they never abandoned it. [CR1 125]. This fact is supported by the affidavits of Karon Robertson and Gary Neubauer as well as Douglas Ulbrich. [CR1 128 ¶ 2], [CR1 131 ¶ 2].

For a number of years, Douglas and Consuella claimed a homestead property tax exemption for their residence in San Antonio, but that exemption was ended in 2010. The fact that Mr. and Mrs. Ulbrich claimed a homestead property tax exemption on their San Antonio residence was not an abandonment of their Medina County rural homestead. After Consuella's death, Douglas filed an Application for Residential Homestead Exemption with the Medina County Appraisal District in April 2011 for tax year 2011.

Mr. and Mrs. Ulbrich also owned furnishings and other personal property as well as motor vehicles, ranch vehicles, equipment and implements, most of which was exempt property protected from attachment pursuant to the Texas Constitution. Mr. Ulbrich has timely filed an affidavit in support of his application to set aside exempt property, which describes his property that he claims to be

7

exempt from partition, sale or distribution pursuant to his rights as a surviving spouse under the Texas Constitution, Texas Property Code and Texas Probate Code, Section 271(b).

In April 2011, after Consuella's death but before Court approval of an inventory and list of claims, Mr. Ulbrich filed an affidavit in the Deed Records of Medina County voluntarily designating his home and rural property in Medina County, Texas as his homestead pursuant to Tex.Prop.Code Chapter 41. [CR1 152-155] He filed another affidavit declaring his Medina County rural homestead in January 2012. The voluntarily designation of Douglas Ulbrich's homestead before the preparation and court approval of an inventory of the property of Mrs. Ulbrich's estate has been a matter of public record for the past year.

Douglas' rural homestead is described as 160 acres of land together with improvements including a residence situated about 10 miles N 16 degrees west of Hondo, Medina County, Texas, out of Survey No 419, Abstract No. 1174, H. E. & W. T. R.R. Co., original Grantee, being the South portion of the division of a certain 404.58810 acre tract of land surveyed by John Poerner and Associates on March 23, 1977, said 404.58810 acre tract of land being the residue of a certain 415 acre tract of land conveyed by Deed to J. E. Ulbrich from Willie Schlentz,

8

dated February 15, 1947, as recorded in Volume 138 on page 611 of the Deed Records of Medina County, Texas, and being more particularly described by metes and bounds in said Deed, which is incorporated herein by reference for all purposes. [CR1 125 ¶¶ 5 & 6].

Douglas would show that his home in Medina County qualifies as his homestead because title to the property is in his name; he resides at the property as his home; he has used the property as his rural home for many years; he considers the property to be his only homestead; the homestead includes a house and 160 acres; he has declared his intention for the property to be his homestead; he does not claim any other property to be his homestead; he has advised the Medina County Appraisal District that he claims the property as his homestead for taxation purposes; his drivers license shows the homestead as his residence address; and he has motor vehicles registered at his homestead address. [CR1 125 ¶¶ 7-10].

Douglas claims a right as surviving spouse to use or occupy the rural homestead for the rest of his life pursuant to Tex.Prop.Code Section 283, and he has timely filed an application to set aside his exempt homestead pursuant to the Texas Probate Code, Section 271(b). [CR1 152-155].

## STANDARD OF REVIEW

In order to establish a right to a traditional motion for summary judgment, the movant must show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Provident Life & Accident Insurance Co. v. Knott,* 128 S.W.3d 215-216 (Tex. 2003). If the movant meets this burden, then the non-movant must produce summary judgment evidence to raise a genuine issue of material fact. *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex. 1989). If the non-movant does not succeed in raising a genuine issue of material fact, then the motion must be granted.

## SUMMARY OF ARGUMENT

Douglas claims a right to designate his rural homestead and to have it set aside for his use and benefit during his lifetime pursuant to the Texas Probate Code, Section 271 after his wife died intestate.

Douglas submits that he followed the appropriate procedure by applying to the court to set aside his 160 acre ranch in Medina County, Texas, which he had occupied and used for homestead purposes during his marriage to the deceased and designated as his probate homestead by applying to the court to set it aside. [CR1 152-155]. However, on August 10, 2012, the trial court erroneously signed

10

an Order Awarding Exempt Property and denied Douglas' right to designate his ranch as his probate homestead. Instead, the trial court erroneously set aside Douglas' San Antonio residence at 3939 Starhill as his probate homestead. [CR1 20 – Dkt. 00013]. Douglas appealed the trial court's order to the Fourth Court of appeals, Appeal No. 04-12-00514-CV, and the Order awarding exempt property, dated August 10, 2012 was reversed and remanded.

After the case was remanded, the parties signed a Rule 11 agreement on August 26, 2014 setting aside exempt personal property for Douglas' use and benefit as the surviving spouse. On November 5, 2014, the trial court entered an Order granting motion to enter an Order concerning truck and automobiles, which resolved claims to set aside exempt personal property for Douglas' use and benefit as surviving spouse pending a trial on the merits. [CR1 21 - Docket Entry 00043].

Then, on October 14, 2014, Consuella's heirs filed a motion for summary judgment requesting an order declaring that Douglas was awarded his residence at 3939 Starhill, San Antonio, Texas as his probate homestead and that he had abandoned it, when he agreed that it could be sold as non-exempt property owned in common with Consuella's Estate. The trial court granted the heirs' motion for summary judgment in error on November 5, 2014, notwithstanding genuine issues

11

of material fact to the contrary. [CR1 21 – Docket Entry 00044].

Douglas filed a notice of appeal and requested a temporary stay before the trial court had an opportunity to sign orders directing him to turn over keys to his ranch to Consuella's heirs and appointing commissioners to make a recommendation to partition in kind the 25% undivided interest in the 160 acre ranch, which is owned by Consuella's estate.

Therefore, Douglas requests this Court to reverse the trial court's summary judgment and remand the matter for a jury trial on the merits of his claim.

ARGUMENT AND AUTHORITIES

Exemptions statutes have been traditionally construed liberally by our courts. See *Cobbs v. Coleman,* 14 Tex. 594 (1855); *Hickman v. Hickman,* 149 Tex. 439, 234 S.W.2d 410 (1950). They are never restricted in their meaning and effect so as to minimize their operation upon the beneficent objects of the statutes, and questions regarding the extent of exemptions are generally resolved in favor of the one claiming exemption. Id., 234 S.W.2d at 413. *Carson v. McFarland,* 206 S.W.2d 130, 132 (Tex.Civ.App.--San Antonio 1947, writ ref'd).

1    The trial court granted summary judgment in error because there were genuine issues of material fact as to each element of Douglas' claim to set aside his ranch as his probate homestead.

12

In its opinion, dated January 15, 2014, in the prior appeal in this case this Court stated: "Before the inventory, appraisement, and list of claims is approved or before the filing of the affidavit in lieu of the inventory, appraisement, and list of claims, a surviving spouse may apply to the probate court pursuant to section 271(b) of the Probate Code "to have exempt property, including the homestead, set aside by filing an application and a verified affidavit listing all the property that the applicant claims is exempt." *See* TEX. PROB. CODE ANN. § 271(b) (West Supp. 2012). An applicant under section 271(b) "bears the burden of proof by a preponderance of the evidence at any hearing on the application." *Id*. § 271(c). The probate court "shall set aside property of the decedent's estate that the court finds is exempt." *Id.*" *In the Estate of Consuella Perkins Ulbrich, deceased*, 04-12-00514-CV, at 13 (Tex. Civ. App. - San Antonio, January 15, 2014).

Douglas submits that he is a surviving spouse, and he filed an application and a verified affidavit listing all the property that he claimed was exempt requesting the probate court to set aside the exempt property, including the homestead, before the inventory, appraisement, and list of claims was approved or before the filing of the affidavit in lieu of the inventory, appraisement, and list of claims pursuant to section 271(b) of the Probate Code. Douglas submits that he

13

demanded a jury trial and paid a jury fee, but he has not yet had a trial on the merits of his probate homestead claim. Therefore, Douglas submits that the trial court granted summary judgment in error because there are genuine issues of material fact as to his probate homestead claim.

Douglas further submits that the summary judgment, dated November 5, 2014, [CR 269-270], was an appealable order from which he could appeal. This Court has stated: "Generally, appeals may be taken only from final judgments. *De Ayala v. Mackie*, 193 S.W.3d 575, 578 (Tex 2006). "Probate proceedings are an exception to the 'one final judgment' rule; in such cases 'multiple judgments final for purposes of appeal can be rendered on certain discrete issues." *Id*. (quoting *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192 (Tex. 2001)). "The need to review controlling, intermediate decisions before an error can harm later phases of the proceeding has been held to justify this rule." *Id*. (quotations omitted). "Not every interlocutory order in a probate case is appealable, however, and determining whether an otherwise interlocutory probate order is final enough to qualify for appeal, has proved difficult." *Id*. "In the past, courts relied on a 'substantive right' test to determine whether an ostensibly interlocutory probate order had sufficient attributes of finality to confer appellate jurisdiction." *Id*.

14

Under that test, "once the probate court adjudicated a 'substantial right,' the order was appealable." *Id*. In 1995, the supreme court attempted to clarify this test, noting "while adjudication of a 'substantial right' was one factor to be considered, equally important" was "earlier precedent requiring that the order dispose of all issues in the phase of the proceeding for which it was brought." *Id*. Therefore, "[t]o sidestep 'potential confusion' about the appropriate test for jurisdiction," the court adopted the following test:

> If there is an express statute, such as the one for complete heirship judgment, declaring the phase of the probate proceeding to be final and appealable, that statute controls. Otherwise, if there is a proceeding of which the order in question may logically be considered a part, but one or more pleadings are also part of that proceeding raise issues or parties not disposed of, then the probate order is interlocutory.

*Id*." *In the Estate of Consuella Perkins Ulbrich, deceased*, supra, at 13.

"In *De Ayala v. Mackie,* 193 S.W.3d at 578, the supreme court held that the trial court's order denying a plea to the jurisdiction and refusal to removae an executor was not appealable. The court explained that "an order denying a motion to dismiss an entire proceeding for want of subject-matter jurisdiction is more like a prelude than a finale." *Id*. "It certainly does not dispose of a claim that, if asserted independently, would be the proper subject of a lawsuit." *Id*. Moreover,

15

the supreme court explained that "the trial court's order was interlocutory because it did not dispose of all parties or issues in a particular phase of the proceedings." *Id*. At 579. "Because an order denying a plea to the jurisdiction and refusing to remove an executor does not end a phase of the proceedings, but sets the stage for the resolution of all proceedings, the order is interlocutory." *Id*." *In the Estate of Consuella Perkins Ulbrich, deceased*, supra, at 13-14.

In support of his arguments, Douglas cites *Majeski v. Estate of Majeski*, 163 S.W.3d 102 (Tex. App. - Austin 2005, no pet.). In *Majeski*, the adult daughter and surviving spouse had a dispute over a tract of land owned by the decedent before her marriage and on which she and her spouse lived and worked. *Id*. At 104. The decedent's surviving spouse claimed a homestead right, while her adult daughter argued that the rental of portions of the property defeated the spouse's homestead rights, *Id.* After an inventory of the estate was filed, the surviving spouse, claiming a life estate in the property as the decedent's surviving spouse, sought a judgment declaring the tract of land, including any improvements, rental properties and business on the tract of land, to be his homestead. *Id.* at 105. The decedent's adult daughter countered, asking the court to determine what portion of the property was the surviving spouse's homestead, and also asking the court to

declare "the value and character of all items of personal property" and what assets should be given to the spouse as the decedent's surviving spouse. *Id.* She also asked the court to deduct from the spouse's share of the estate "the value of all assets not accounted for which were in his possession." *Id.* Both sides then moved for summary judgment on the issue of the homestead status of the property. *Id.* The trial court granted summary judgment on the issue of the homestead status of the property. *Id.* The trial court granted summary judgment in the adult daughter's favor, finding that the surviving spouse's homestead did not consist of the entire tract of land, but only a portion of the land. *Id.* The surviving spouse appealed, and the adult daughter argued that the trial court's order was interlocutory and not an appealable order. *Id.* The adult daughter emphasized that the trial court's order was not appealable because it did not address the requests in her counter-petition relating to the other assets held by the surviving spouse. *Id.* The court of appeals disagreed, explaining that the "only dispute at issue at this stage of the probate proceeding was the homestead status of the property." *Id.* At 106. According to the court, although the adult daughter "asserted claims related to other assets, those questions were separate from the homestead issue." *Id.* Because the "trial court's order made a final resolution of the homestead issue as to

17

the entire tract of land," the trial court held that the order "concluded a discrete phase" of the proceedings, and was final and appealable. *Id*.; *In the Estate of Consuella Perkins Ulbrich, deceased*, supra, at 14-15.

Douglas submits that *Majeski* is on point with this case because the adult children in this case filed a motion for summary judgment seeking an order that 3939 Starhill, San Antonio had been awarded as Douglas' Texas Constitution's Survivor Homestead and that he had abandoned it, when he agreed to let it be sold as non-exempt property. Thus, as in *Majeski*, the only dispute at issue in the motion for summary judgment regarding the surviving spouse's section 271 application was the homestead status of the property. Compare *id*. at 106 with *In the Estate of Consuella Perkins Ulbrich, deceased*, supra, at 15-16. On November 5, 2014, the trial court entered an Order resolving Douglas' claim to set aside exempt personal property pending a trial on the merits pursuant to a Rule 11 agreement among the parties. Then, the trial court granted summary judgment on the sole remaining exempt property issue related to the probate homestead.

This appeal is distinguished from the prior appeal in this case because Douglas' section 271 application to set aside the probate homestead was the only matter that was considered in the summary judgment. *In the Estate of Consuella*

*Perkins Ulbrich, deceased*, supra, at 15-16. For that reason, the probate court called its November 5, 2014 order a "summary judgment", as distinguished from the prior February 13, 2012 order, which was called a "partial order". The entire motion for summary judgment was granted, thereby denying Douglas' probate homestead claim. The next step would be to appoint special commissioners to recommend partition and to appoint a receiver to sell the estate's 25% undivided interest in the 160 acre ranch. Therefore, Douglas submits that the November 5, 2014 summary judgment was an appealable order because it concluded his section 271 probate homestead claim, which was a discrete phase of the proceedings. Distinguish *In the Estate of Consuella Perkins Ulbrich, deceased*, supra, at 15-16.

2 The trial court erred in finding as matters of law that the homestead of the Decedent was 3939 Starhill, San Antonio, Texas because there were genuine issues of material fact that the Decedent's homestead was the family ranch in Medina County.

The summary judgment evidence shows that homestead has been located at the Ulbrich Ranch, 5740 FM 462, Medina County, Texas since 1978, when Douglas and three of his siblings each inherited a 25% undivided interest in 320 acres of his parents' ranch in Medina County, Texas. In February 1979, Douglas bought his sister Laverne's 25% undivided interest in the ranch. The affidavits and exhibits attached to Douglas' response to the motion for summary judgment

contain direct and circumstantial evidence that his 160 acre Medina County ranch was his rural homestead during his marriage to Consuella and continued to be his rural homestead after her death to the present. (Affidavit of Douglas Ulbrich, dated January 10, 2012 [CR 124-127] at page 125 ¶¶ 8-10, page 226 ¶¶ 11-13) (Affidavit of Karon Robertson, dated 10-1-10 [CR 128-130] at page 128 ¶ 2) (Affidavit of Gary Neubauer, dated 9-27-10 [CR 131-133] at page 131 ¶ 2) (Affidavit of Al Cargen, dated December 17, 2012 [CR 134-139] at page 134 ¶ ¶ 4-5, page 135 ¶¶ 6-16, page 136 ¶¶ 17-25) (Affidavit of Carolyn Watson, dated December 17, 2012 [CR 140-145] at page 140 ¶ ¶ 4-5, page 141 ¶¶ 6-16, page 142 ¶¶ 17-25) (Affidavit of Mary Dahlman, dated December 17, 2012 [CR 146-151] at page 147 ¶ ¶ 5-16) (Affidavit of Douglas Ulbrich, dated September 24, 2012 [CR 173-182] at page 173 ¶ ¶ 2-4, page 174-179).

3     The trial court erred in finding as a matter of law that the Texas Constitution's Survivor Homestead granted to Douglas Ulbrich was 3939 Starhill, San Antonio, Texas because there were genuine issues of material fact that the Decedent's homestead was the family ranch in Medina County.

There is no evidence that the residence at 3939 Starhill, San Antonio, Texas was granted to Douglas as his Texas Constitution's Survivor Homestead. On August 10, 2012, the trial court Ordered that the homestead located at 3939

20

Starhill, San Antonio, Texas shall be set aside for the benefit of Douglas J. Ulbrich as the surviving spouse homestead, but this Order was reversed on appeal.

4       The trial court erred in finding as a matter of law that Douglas Ulbrich voluntarily abandoned and discontinued use of the Texas Constitution's Survivor Homestead located at 3939 Starhill, San Antonio, Texas because there were genuine issues of material fact that the Decedent's homestead was the family ranch in Medina County.

Douglas submits that the affidavits attached to his response to the motion for summary judgment, referenced above, show direct and circumstantial evidence that Consuella and his homestead was the family ranch, which he timely designated as his probate homestead pursuant to the Texas Probate Code, § 271 prior to approval of an inventory. Conversely, Douglas submits that the affidavits attached to his response to the motion for summary judgment, referenced above, show direct and circumstantial evidence that Consuella's and his homestead was not 3939 Starhill, San Antonio, Texas.

Therefore, Douglas submits that the summary judgment evidence shows that his homestead was his 160 acre ranch in Medina County, Texas, not 3939 Starhill, San Antonio, Texas, and he did not abandon his probate homestead. Alternatively, the summary judgment evidence establishes a genuine issue of material fact whether Douglas' homestead was his 160 acre ranch in Medina County, Texas, not

3939 Starhill, San Antonio, Texas, and that he did not abandon his probate homestead. At the time of his wife's death, Mr. Ulbrich owned four residences, of which two were located at the Ulbrich Ranch, one was in Hondo, and the other was in San Antonio. Mr. and Mrs. Ulbrich always considered the Ulbrich Ranch to be their homestead, notwithstanding their application for a property tax exemption for their house in San Antonio, Bexar County, Texas.

The Texas Property Code, § 271. EXEMPT PROPERTY TO BE SET APART provides as follows: (a) Unless an affidavit is filed under Subsection (b) of this section, immediately after the inventory, appraisement, and list of claims have been approved, the court shall, by order, set apart: (1) the homestead for the use and benefit of the surviving spouse and minor children; and (2) all other property of the estate that is exempt from execution or forced sale by the constitution and laws of this state for the use and benefit of the surviving spouse and minor children and unmarried children remaining with the family of the deceased. (b) Before the approval of the inventory, appraisement, and list of claims: (1) a surviving spouse or any person who is authorized to act on behalf of minor children of the deceased may apply to the court to have exempt property, including the homestead, set aside by filing an application and a verified affidavit

22

listing all of the property that the applicant claims is exempt; and (2) any unmarried children remaining with the family of the deceased may apply to the court to have all exempt property other than the homestead set aside by filing an application and a verified affidavit listing all of the other property that the applicant claims is exempt. (c) An applicant under Subsection (b) of this section bears the burden of proof by a preponderance of the evidence at any hearing on the application. The court shall set aside property of the decedent's estate that the court finds is exempt.

Douglas submits that he complied with the requirements of Texas Probate Code § 271(b) by timely filing his application on January 17, 2012 to set aside exempt property including his rural homestead supported by his verified affidavit listing all the property that he claims is exempt prior to the Court's approval of an inventory, appraisement and list of claims. *Id.* [CR2 30 – Dkt. 00055] Upon remand from the first appeal, Douglas filed a motion to set aside exempt personal property on May 27, 2014. [CR2 9-13] On August 26, 2014, the parties signed a Rule 11 agreement to set aside exempt personal property pending contest. [CR2 25-26] On November 5, 2014, the trial court entered an Order concerning truck and automobiles pursuant to the parties' Rule 11 agreement. [CR2 47 – Dkt. Entry

23

00042] Then, the trial court granted summary judgment on the sole remaining issue concerning Douglas' probate homestead claim. [CR2 47 – Dkt. Entry 00044]

Douglas also submits that his voluntary designation of his rural homestead after the death of his wife is authorized by controlling case law. *Hunter v. Clark*, 687 S.W.2d 811, 814-815 (Tex.App. —San Antonio 1985) summarizes the rights of the surviving spouse as follows:

> The language of the Constitution is plain. The surviving spouse has the same homestead rights as both spouses had prior to the death of one; and this is true whether the survivor be the husband or the wife. *Brown v. Reed,* 48 S.W. 537, 538 (Tex.Civ.App.1898, writ ref'd).

> The homestead provision is intended to relate to the rights of heirs and the surviving husband or wife, as between themselves, to the homestead property. *Spencer v. Schell,* 107 Tex. 44, 173 S.W. 867 (1915). TEX. CONST. art. XVI, § 52 gives to the surviving spouse the right to use and occupy the homestead, even though it was the separate estate of the deceased. *Jenkins v. Hutchens,* 287 S.W.2d 295, 298 (Tex.Civ.App.--Eastland 1956, writ ref'd n.r.e.). The deceased may not defeat this right by devising the property before death. *Wicker v. Rowntree,* 185 S.W.2d 150, 152 (Tex.Civ.App.--Amarillo 1945, writ ref'd w.o.m.).

> Even if the survivor (Hunter) had a homestead right of his own when he

Page 815

> married, and at the death of deceased, he still owned and controlled that property, the survivor has a right to the subject homestead. *Clift v.*

24

*Kaufman & Runge,* 60 Tex. 64 (1883); *Pressley's Heirs v. Robinson,* 57 Tex. 453, 460 (1882). This is true even though there is no doubt that Hunter owned a house where he could presently be living. The surviving spouse may use and occupy the homestead so long as he or she elects to do so. *Tiboldi v. Palms,* 34 Tex.Civ.App. 318, 78 S.W. 726, aff'd 97 Tex. 414, 79 S.W. 23 (1904). This applies against the creditors or heirs of the deceased. *Blum v. Gaines,* 57 Tex. 119, 122 (1882).

The homestead right is a right which vests immediately upon the death of the spouse and continues unless abandoned. *Good v. Good,* 293 S.W. 621, 623 (Tex.1927). The surviving spouse has the right to live on the premises for the remainder of his life without the permission of the deceased spouse's heirs. *Hill v. Aldrich,* 242 S.W.2d 465, 466 (Tex.Civ.App.--San Antonio 1951, writ dism'd). Testamentary disposition by the deceased may not destroy the right of the surviving constituent family members to use and occupy the homestead. *Lindsley v. Lindsley,* 139 Tex. 512, 163 S.W.2d 633, 636 (1942). The homestead right is a personal privilege with the attributes and incidents of a life estate. *Petrus v. Cage Brothers,* 128 S.W.2d 537, 538 (Tex.Civ.App.--San Antonio 1939, writ ref'd). It is in the nature of a life estate analogous to that of a life tenant. *Rancho Oil Co. v. Powell,* 142 Tex. 63, 175 S.W.2d 960, 963 (1943). The surviving spouse is not liable for rent payable to the heirs. *Pressley's Heirs v. Robinson, supra* at 458. But the surviving spouse is not entitled to reimbursement for improvements. During the continuation of his estate he is chargeable with the expenses of upkeep of the property. *Sargeant v. Sargeant,* 19 S.W. 382, 385 (Tex.Civ.App.--Fort Worth 1928, no writ). See *George v. Taylor,* 296 S.W.2d 620, 624 (Tex.Civ.App.--Fort Worth 1956, writ ref'd n.r.e.) as to rights of heirs. Id.

The Court further decided as follows:

The payment of taxes by the devisee under Katherine's will is not a showing of Hunter's abandonment of the homestead rights. *Salmons v. Thomas,* 25 Tex.Civ.App. 422, 62 S.W. 102, 104 (1901, no writ). Similarly, this would not constitute waiver by Hunter. Moreover, the designation by Hunter of his

former homestead property for taxation purposes, while it may be challenged by the taxing authority, is not such conduct which will demonstrate waiver.

In 1978, the Texas Supreme Court decided the case of *Williams v. Williams*, 569 S.W.2d 867 (Tex. 1978) and ruled as follows:

> Article XVI, section 52 of the Texas Constitution provides that the homestead shall not be partitioned among the heirs of the deceased during the lifetime of the surviving husband or wife, or so long as the survivor may elect to use or occupy the same as a homestead. [1] This is sometimes referred to as the probate homestead. O. Speer, Texas Family Law § 36:62, at 208 (5th ed. 1977). This homestead right of the survivor has been held to be one in the nature of a legal life estate or life estate created by operation of law. See *Sparks v. Robertson,* 203 S.W.2d 622 (Tex.Civ.App. Austin 1947, writ ref'd); *White v. Blackman,* 168 S.W.2d 531 (Tex.Civ.App. Texarkana 1942, writ ref'd w. o. m.); *Petrus v. Cage Bros.,* 128 S.W.2d 537 (Tex.Civ.App. San Antonio 1939, writ ref'd); Comment, The Widow's Exemption in Texas, 25 Baylor L.Rev. 346, 347 (1973). The Probate Code requires that the probate homestead and certain exempt personal property [2] be set aside to the surviving spouse. Tex.Prob.Code Ann. §§ 271, 272, 283, 284 (1956). These rights are provided by law for the protection of the family and to secure a home for the surviving spouse.

Therefore, Douglas submits that he is entitled to claim his 160 acre rural homestead, which is less than the maximum 200 acres for a survivor's rural homestead. He also submits that he did not waive his right to claim survivorship rights in his rural homestead by applying for homestead exemption benefits for his

Bexar County residence for taxation purposes. *Hunter v. Clark*, 687 S.W.2d 811, 814-815 (Tex.App. —San Antonio 1985).

The facts in the instant case are somewhat similar to the facts in *Simank v. Alford,* 441 S.W.2d 234 (Tex.Civ.App. —Austin 1969), which involved an urban residence that was claimed as an exempt homestead for property tax purposes and a rural homestead where the family lived only for a brief time.

> "When Elmo R. J. Simank died intestate in 1963 he owned 67.9 acres of farm land in Williamson County which is the subject of this lawsuit…
>
> The sole question is whether the undivided one-half interest in the land awarded to Simank's mother, brother, and sister by the trial court is subject to the homestead interest of Simank's widow. *Id*., at 234.
>
> The cause was tried before the court in March, 1968, resulting in a judgment entered October 31, 1968, awarding an undivided one-half interest in the land to plaintiffs and an undivided one-half to the widow, with the further provision that the interest of plaintiffs be '* * * subject to homestead interest of Mildred Simank (the widow) in and to said property * * * and that the said Mildred Simank * * * have and recover a homestead interest in

> and to the one-half undivided interest of said property owned by * * *' plaintiffs.
>
> Elmo Simank bought the 67.9 acres of land in 1954, prior to his marriage in December, 1959, to Mildred Simank, appellee. After their marriage, Simank and his wife lived in a house owned by his wife in Austin until January, 1961.

27

Mildred Simank testified that she and her husband moved to the 67.9-acre farm where they lived 'for a little while' before moving about 200 yards to the recently remodeled home of Ella Simank, mother of Elmo Simank, whose farm adjoined the 67.9-acre tract. Ella Simank testified that her son, Elmo, and his wife, Mildred, never did live in the house on Elmo's farm, but that they started living with her early in 1961 and stayed there until his death June 4, 1963.

Mildred Simank testified without contradiction that she and Elmo Simank moved from her house in Austin in January, 1961, intending 'never to live there again' and that their intentions when moving were that, 'We were going to live on his land.' The record also shows that Simank and his wife never returned to the Austin house, that Mildred Simank did not return to it after her husband's death, and that in 1966 the place was sold. *Id.*

After Elmo Simank's death his widow moved back to Austin, where she was employed, and rented the farm to Gene Devine and later to Lee Hurst Alford, who raised crops on the land. Mildred Simank testified that she and her husband 'claimed this 67.9-acre tract as a home' and that she believed it was in the years 1961 and 1962 that her husband claimed the tract 'as a homestead.' This testimony was given during inquiry under cross-examination regarding claim of a 'home for tax purposes' on the Austin property by Mildred Simank prior to and during occupancy of the Austin place by her and her husband before moving to the farm. Mildred Simank testified that after her husband's death she left to her attorney matters pertaining to renting the land and all matters pertaining to the estate. She stated that she did not know whether the land had been claimed as her home 'since Elmo's death.'

Mildred Simank testified that she claimed the Austin house as a homestead prior to her marriage and during the year or more she and her husband occupied it prior to moving to his farm in January, 1961 . She did not change this designation with the tax collector until a year before she sold the place. After she and her husband moved from the Austin house to the farm, Mildred Simank never lived in the Austin residence. After her husband's death, when she returned to Austin, Mrs. Simank

lived with a friend on Enfield Road before moving to an apartment house where she resided at the time of trial.

There is not sufficient evidence to show abandonment of the homestead by Mildred Simank after her husband's death, and this contention is not sustained. *Jolesch and Chaska Co. v. Hampton,* 297 S.W. 271(Tex.Civ.App., Waco, 1927, writ ref.) and cases there cited. *Id*., at 236

Mildred Simank testified that in 1960, the year following her marriage to Elmo Simank, they considered plans to build a home on his land. Improvements were made, including a roof, on the old house already on the land, apparently in that same year, for in January, 1961, they left Austin, where they had lived since marrying, and lived for a while in their house on his land. However brief this occupancy may have been, there was occupancy, followed by moving across the property line into his mother's home with her. They continued to cultivate the 67.9 acres, and Elmo made a claim of homestead, beginning with the year they moved into their house, until the year he was fatally injured in an accident.

The evidence, when given interpretation favorable to appellees, as required by law, is sufficient to show establishment of a homestead by Simank and his wife on the 67.9 acres in Williamson County.

Although the courts of Texas have sought to 'prevent this most valuable right from being converted into an instrument of fraud' with respect to the claims of creditors (see Gardner v. Douglass, supra), the Supreme Court has followed the generally accepted rule that homestead laws are to be liberally construed to effectuate their beneficent purpose. *Woods v. Alvarado State Bank,* 118 Tex. 586, 19 S.W.2d 35 (1919);*Cocke v. Conquest,* 120 Tex. 43, 35 S.W.2d 673 (1931); *Trawick v. Harris,* 8 Tex. 312 (1852); *Schneider v. Bray,* 59 Tex. 668 (1883). Application of the rule in this case does no violence to the claim of a creditor, since none is involved, but only extends to the widow enjoyment of a homestead right in the land until such time as that right may expire.

As was said in *Foley v. Holtkamp,* 28 Tex.Civ.App. 123, 66 S.W. 891 (Galveston, 1902, writ ref.), 'We do not mean to say the case is a strong one, or that, if primarily presented to us, we would have reached the same conclusion,' but under the testimony we are unable to say that the implied

Page 238

findings of the trial court 'are so against the weight of the evidence as to require our interference.'

The facts supporting Douglas' homestead claim are stronger than Mrs. Simank's. Douglas and Consuella lived at the family ranch home for more than 30 years, while they also maintained a residence in San Antonio. One year they let one of Consuella's daughters live at the San Antonio house with her family, and Douglas and Consuella stayed at their ranch home. They planned to build a new home at the ranch, and Douglas made preparations by clearing a 30 acre homesite. After Consuella's death, Douglas let his tax exemption lapse in Bexar County and applied for a homestead tax exemption in Medina County. Now he spends all of his time at the ranch tending his goats, farming and ranching.

Dedication of a rural homestead is accomplished by occupancy thereof by the head of the family as a place of residence, and the use thereof for the support of the family. Arts. 3841-3859, Vernon's Ann.Civ.St., govern the voluntary designation. Under these articles the head of the family has a right to designate

30

any particular two hundred acres as a homestead, out of a larger tract or tracts of land; and, where the homestead has been designated, the excess of such tract or tracts over and above the homestead exemption, is subject to partition from such homestead, and sale under proper orders of a court having jurisdiction. If the owner of a homestead has failed to designate and set same aside, he, nevertheless may still have the right of homestead exemption. *Blake v. Fuller*, 184 S.W.2d 148, 151 (Tex.Civ.App. 1944).

The Court in *Blake* went on to state as follows:

"It is elementary, we think, that where a rural homestead is established on a tract of land in excess of 200 acres, that the sale of the excess does not affect the homestead rights in the retained land; and, where the head of a family is residing on a tract of more than 200 acres, subjecting the whole of such tract to uses which impress it with the homestead character, he has the right to determine and designate the particular 200 acres as his homestead, provided that in so doing, the 200 acres so designated shall include his mansion house and the appurtenant lands and improvements actually and directly used in connection therewith by himself and family for the purpose of making same their home; and that, in exercising his right of designation, he acts in good faith so as to substantially secure to himself and family the benefits which the Constitution intended to give them. *McGaughey et al. v. American Nat. Bank,* 41 Tex.Civ.App. 191, 92 S.W. 1003, writ denied." *Id*.

Douglas submits that, like the surviving spouse in *Blake*, who had more then 200 acres, he had more real property than his maximum probate homestead

because he had a house in San Antonio, Bexar County; a house in Hondo, Medina County; and home and rent house at his ranch in Medina County. Therefore, upon the death of his wife, Douglas had a right to voluntarily designate his rural homestead, which he did by filing an affidavit in the deed records in Medina County. *Blake v. Fuller*, 184 S.W.2d 148, 151 (Tex.Civ.App. 1944).

5      The trial court erred in finding as a matter of law that Douglas Ulbrich cannot transfer the Texas Constitution's Survivor Homestead to any other property.

Where the husband and wife have so designated and occupied the rural homestead, and the wife, after the husband's death, continuously used and asserted homestead rights therein, on sale of the excess, the wife would have a right to again set aside the homestead as designated by them, or change, alter and substitute the designation for another. *Blake v. Fuller*, 184 S.W.2d 148, 151 (Tex.Civ.App. 1944). The law does not require the homestead designation to be in any particular form, or that the owners may not change the designation when once made. *Id.* The right of selection necessarily means the right to take such, and describe such as the owner may desire. *Id.,* citing, *Shippey et al. v. Hough,* 47 S.W. 672 (Civ. App. Texas 1898), writ refused.

In *Shippey*, it was contended by counsel for the appellants that the widow's homestead right, as against the claim of appellants, was limited to the 30 or 40 acres of land in actual use by Mrs. Hough and her husband at the time of the latter's death. The Court ruled against this contention on a former appeal in this case, and it saw no reason to change the ruling then made. *Hough v. Shippey (Tex. Civ. App.)* 40 S.W. 332. The Court went on to state that it could not be denied that if the husband were still alive, and asserting a homestead right, he could hold 200 acres of the land as a homestead, although he actually used less than that quantity; and the Court held on the former appeal, and still held, that the right of the surviving spouse in the homestead was as great as that of husband and wife, if both were asserting the homestead exemption. *Shippey et al. v. Hough,* 47 S.W. 672, at 674 writ refused.

The further proposition was submitted that, if the widow had the right to select 200 acres as her homestead, she had not the right to run zigzag lines, leaving the remainder of the survey irregular in form, and secure thereby the most valuable part of the survey as a homestead. The Court also ruled against this contention. The right to select the homestead is not affected by the fact that the better land has been selected, and that of less value left subject to the claims of others. The law

does not require the homestead to be in any particular form, and the right of selection necessarily means the right to take such as may be desired; and, as persons having the right to select usually take that believed to be the best, it is a reasonable supposition that, in allowing the right to select the homestead, it was in contemplation of the legislature that the best land would be selected for homestead purposes. *Shippey et al. v. Hough,* 47 S.W. 672, at 674.

Therefore, Douglas Ulbrich submits that he has a right to select as his homestead the most valuable real estate that he and his wife owned during their marriage. The family ranch is more valuable to Douglas as a homestead than the house in San Antonio because he can continue to live and work at the ranch and make a living in his retirement. He could not do the same at his house in town. He applied to the Court to set aside his exempt ranch homestead, since he could no longer keep all the property he and his wife owned during their marriage, and the house in San Antonio has been sold as non-exempt real estate.

While the instrument designating the homestead is required by the statute to contain a description of the property, specifying metes and bounds and other facts, it seems that a failure to conform to the statutory requirement in this respect does not render ineffectual a mortgage or deed of trust on the part of the land in excess

of two hundred acres.' 22 T.J. 211, Sec. 148. *Blake v. Fuller*, 184 S.W.2d 148, 151 (Tex.Civ.App. 1944). The designation is intended to exclude 200 acres from forced sale, and to allocate the excess unencumbered with homestead claim. *Id.* The designation instrument here in evidence, definitely sets out the 131 acres by metes and bounds, and the complement remainder 'enough land out of the 160 acres * * * to make 200 acres in all reserved as a homestead.' Like Lincoln Kennedy and wife, Douglas sufficiently described the land reserved for his homestead, leaving his San Antonio house free of such claim, and subject to forced sale. *Id.* So, on the death of Consuella, all rights in the rural homestead continued in Mr. Ulbrich by virtue of Sec. 52, Art. 16, Texas Constitution.

The Texas Supreme Court stated in *Andrews v. Security Nat. Bank of Wichita Falls*, 121 Tex. 409, 50 S.W.2d 253, 256 (Tex. 1932):

> Homestead laws are not only based upon a tender regard for the welfare of the citizen, but have for their object the stability and welfare of the state. 29 Corpus Juris, pp. 782, 783; *Armitage v. Toll,* 64 Mich. 412, 415, 31 N.W. 408; *Dalton v. Simpson,* 270 Mo. 287, 298, 193 S.W. 546; *Franklin v. Coffee,* 18 Tex. 413, 70 Am. Dec. 292; *Black v. Rockmore,* 50 Tex. 88, 96.

> The universal rule of construction is that homestead provisions of the organic law and statutes are to be liberally construed, for the purpose of effectuating the wise and salutary provisions thereof. 13 Ruling Case Law, p. 547, s 8; 29 Corpus Juris, p. 787, s 15; *Woods v. Alvarado State Bank,* 118 Tex. 586, 19 S.W.2d 35; *Schneider v.*

35

*Bray,* 59 Tex. 668; *Pocoke v. Peterson,* 256 Mo. 501, 165 S.W. 1017; *Riggs v. Sterling,* 60 Mich. 643, 27 N.W. 705, 1 Am. St. Rep. 554.

The Texas Supreme Court provided a thorough history of homestead rights in

*Woods v. Alvarado State Bank*, 118 Tex. 586, 19 S.W.2d 35, 38 (Tex. 1929).


"We think the homestead provisions of our Constitution and statutes beyond any question show a purpose not only to protect the family as a whole, but the constitutent units of that whole. In plain terms, the Constitution and laws protect first the husband, wife, and children, jointly or as a family; second, they protect the surviving husband; third, they protect the surviving wife; fourth, they protect the surviving children, although some of them may be adults when the family unit is dissolved by death. Our Constitution and statutes show definitely that in the development of our homestead laws, we have long since passed beyond the initial stage shown in the Exemption Act of 1839, and that stage of the law when it may be held that the head of the family is protected in homestead rights for the benefit of the family alone. Since it is plain that the general purpose of our homestead laws is to protect the individuals who compose the family, as well as the family, we think it would be a very illiberal construction to say that when once there is a family composed of father and minor children, the homestead, when the latter become of age and cease to be members of the household, the remaining constituent, shall not be protected. Applying the liberal rule, we think that when once the homestead comes into existence by reason of the family composed of the father and minor children (not finding in the Constitution and laws any designated termination of that type of homestead estate), we are left free to say when it terminates, or rather we are left free to say that, since the estate is created by the Constitution without limit as to its duration, we are not authorized to say when the estate shall determine, except it may of course cease by alienation, abandonment, or by laws such as apply to the divestiture of other estates. This construction is in accord with the humance principles and wise governmental policy upon which all homestead laws rest. Any

other construction would cast homeless upon the world the aged father or mother, who, though separated from his or her spouse (except by death during marriage), had reared a family of children, who becoming of age, had departed from the home. We know there is a great conflict of authority on the question, and that some reason and logic may be applied in support of the rule that would take the homestead from the aged and destitute, who have reared a family without death bringing into application the provisions of section 52 of the Constitution; but neither reason nor logic can say that a homestead law, which turns the aged and weary out of home because the constituent, or constituents, of his or her home have left its [118 Tex. 596] shelter, fulfills the general and underlying purposes of our homestead laws. A rule that father or mother surviving the death of his or her spouse, raising children who became of age and who left the parental home, can still hold the homestead against all creditors and heirs, but that an old grandmother owning a homestead, with a family composed of orphan grandchildren, who finally became of age and left, could no longer be protected, cannot be explained upon any principle which has been invoked as the basis of our homestead laws; and, if we were to say in this case that Woods is not protected here, we would be compelled to say the same thing regarding the case used for illustration above. The hardships entailed by the breaking up of such a home as plaintiff in error's here may be just as desolating and burdensome as if the home had been broken by death and the homestead preserved by survivorship of the husband; and there exists the same personal reason and the same public policy for preserving one as for the other.

In view of the fact that our homestead laws are for the protection of each member of the homestead household, as well as the home itself, those authorities which hold that homestead rights are not destroyed by the dispersal of the members of the family are applicable. In fact, the opinions of this court support the rule we have here announced. In the case of *Bahn v. Starcke,* 89 Tex. 203, 208, 34 S.W. 103, 106 (59 Am. St. Rep. 40), this court said with reference to the cases of *Kessler v. Draub,* 52 Tex. 579, 36 Am. Rep. 727, and *Blum v. Gaines,* 57 Tex. 119: 'In those cases it was held that, where the head of a family, either

37

by the death or dispersion of its members, ceases to have a family, the homestead will remain exempt.'

In the case of *Blum v. Gaines,* 57 Tex. 119, this court said:

'We are asked in this appeal (and this is the sole question presented for our consideration) to reconsider and overrule the case of *Kessler v. Draub,* 52 Tex. 575 (36 Am. Rep. 727), in which it was held that, when a homestead has been once acquired, the subsequent death, marriage or removal of all the individuals who composed the family, except the surviving husband, does not subject the homestead to forced sale, under a judgment against him, he still occupying it as a home. * * *

'There is a market distinction between the right of a widower who is not the head of a family to acquire a new homestead in the first place, and the right to retain the already

existing homestead, after the dissolution of the family by death or otherwise. As to the [118 Tex. 597] acquisition of a new homestead, he would stand on the same ground as a bachelor or spinster, but in the retention of the old homestead he occupies, both in the policy and language of the law, a much more favorable standpoint. There is something repugnant in the proposition, that, to the sorrow of losing his family, should be added the misfortune that his home should be taken from him by forced sale; and that, too, for a debt for the payment of which it was not believed, either by himself or the creditor, at the time of its creation, that the homestead would be liable, and for the security of which it did not enter as an element of credit.

'We think, both on reason and authority, that the rule announced in *Kessler v. Draub,* 52 Tex. (575) (36 Am. Rep. 727), is sound, and the doctrine of that case is reaffirmed.'

The case of *Bahn v. Starcke*, supra, makes no holding contrary to the above. What it did decide was an entirely different question.

In the case of *First National Bank v. Sokolski,* 62 Tex.Civ.App. 324, 131 S.W. 818, the question now before us was presented to the Court of Civil Appeals and decided contrary to our holding. We have examined the application for writ of error, however (which was refused), and the question was not presented to the Supreme Court.

The elementary authorities support our conclusion. 29 Corpus Juris, p. 932; 13 Ruling Case Law, p. 666, s 123; Thompson on Real Property, vol. 1, ss 937, 938. The first authority cited states: 'On the other hand, in many jurisdictions it is held that after a homestead has once been acquired, it is not dependent on the continued existence of a family, and that it is not lost by the death, permanent removal, or majority of all the members of the family other than the head thereof, but continues to be exempt so long as the premises are occupied as a home.' 29 Corpus Juris, p. 932.

The second declares: 'While there is a conflict in the authorities on the point, the general rule is that one who has acquired a homestead does not lose his right to the exemption, so long as he continues to use the property as his home, although, because of death or removal, the family is completely broken up. This rule applies whether the family is broken up by separation or by the death of some of the members thereof, or by the coming of age of the children, and it is based on the hypothesis that the intention of the legislature in enacting the various homestead statutes was to protect the home and all its inmates, including the head of the family as well as the [118 Tex. 598] dependent members, from any business misfortune and financial adversity that might befall them. Some courts, however, looking on statutes providing for a homestead exemption as statutes of nurture, intended solely for the protection of the dependent members of the family from the improvidence of the head thereof, hold that on the dissolution of the family by the death or removal of its members, the reason for the protection ceasing, the head of the family loses his right to a homestead exemption previously acquired. So it has been held that where children have arrived at their majority, and have permanently severed their status as members of the immediate family and taken up their abode elsewhere, the father, on the death of the mother, ceases to be the head of a family so as to be entitled

39

to a homestead exemption. In general, however, while it is necessary that a homesteader should have persons dependent on him for support, and residing with him, in order to constitute a family, it is not necessary that this should be true in order to retain an existing right to a homestead.' 13 Ruling Case Law, pp. 666, 667, s 123.

In Thompson on Real Property, cited above, the author says:

'Some cases hold that while it is essential to the creation of a homestead that the debtor have a family, such requirement is not essential to the continuance of the right. If the family consists of the husband and wife only, their death simultaneously will of necessity destroy the homestead right, as there is no one to claim it. 'Although a homestead estate cannot be acquired except by a householder having a family, yet, when once acquired and still occupied by him, it is not defeated or lost by the death or absence of his wife and children. Any other construction would render a husband who has been deprived of his family by accident or disease, or by their desertion without any fault of his, liable to be turned out of his homestead by his creditors.'"'

'As a general rule the complete breaking up of the family for any cause, does not operate to forfeit the homestead right of one who has acquired it and continues to use the property as a home.' Thompson on Real Property, pp. 1033, 1934, ss 937, 938.

Douglas submits that the homestead protections of the Texas Constitution and the past 150 years of jurisprudence have served Texans well and they are just as important today as they were in 1929.

The law makes provision for the probate court to set aside exempt property for the use and benefit of the widow and children remaining with the family (Art. 3485, R.S.); but where the exempt property-homestead-has been set aside and designated by the head of the family, such homestead is not subject to

40

administration; and where the probate court expressly reserves the homestead to the heirs of the deceased, no further designation is required by the probate court. The right to select and designate the rural homestead, means the right to take such as may be desired, only limited to 200 acres, and to include the living quarters and contiguous lands used in connection therewith. The probate court could do no more, or order any less. *Blake v. Fuller*, 184 S.W.2d 148, 152 (Tex.Civ.App. 1944).

*Ratliff v. Smith*, 178 S.W.2d 138, 141 (Tex.Civ.App. 1943) ruled as follows: "It is elementary, we think, where a rural homestead is established on a tract in excess of two hundred acres that sales of portions thereof do not affect the homestead right in the retained land. A surviving husband or wife may exchange the homestead for another,--may sell the homestead and invest the proceeds to acquire a new homestead. This, even though at the time of such exchange or reinvestment the surviving husband or wife be not the head of a family. *Watkins v. Davis,* 61 Tex. 414; *Schneider & Bro. v. Bray,* 59 Tex. 668."

Therefore, Douglas submits that his right as a surviving spouse to designate his homestead prior to Court approval of an inventory, appraisement and list of claims is limited to whichever residence that he and his wife owned and could

have designated at the time of death. The right of the surviving spouse to designate the probate homestead comes into existence at the time of death of a spouse, and the surviving spouse may voluntarily designate his homestead at that time. *Williams v. Estate of Williams*, 548 S.W.2d 492, 493 (Tex.Civ.App. — Austin 1977). The homestead right in a survivor does not exist until the death of one of the spouses. Vernon's Ann.Tex.Const. art. 16, § 52 (1955). *Id*.

Douglas submits that the summary judgment evidence clearly shows that there are genuine issues of material fact as to his claim that the Ulbrich Ranch is his probate homestead. Douglas was raised in Medina County, Texas, and belonged to a ranching family. When he married, he and Consuella continued the Ulbrich family ranching tradition. At one time, they were managing three ranches in Bexar, Kendall and Medina counties. Although they maintained a residence in San Antonio and Hondo, they always considered the Ulbrich Ranch to be their homestead, notwithstanding their application for a homestead property tax exemption in Bexar County.

Douglas' affidavits establish facts relating to his rural Medina County homestead claim. The Affidavits of people, who have known Douglas and his wife including Al and Katie Cargen, Carolyn Watson, Karon Robertson, Gary

Neubauer, and Mary Dahlman provide corroborating evidence to support Douglas' designation of the Ulbrich Ranch as his probate homestead.

In support of his claim of right to designate the Ulbrich Ranch as his probate homestead, Douglas filed a Formal Bill of Exceptions with attached exhibits including family photos at the ranch and his sworn affidavit, dated 9-24-12, as well as a Verified Supplemental Formal Bill of Exceptions w/exhibits dated 10-3-12.

Douglas also alleges and would prove that banking records from his bank accounts in Hondo, Medina County, Texas, provide evidence that his homestead is his ranch in Medina County, where he lives and banks.  Douglas also alleges and would prove that records of his property tax accounts Medina County, Texas, provide evidence that his homestead is his ranch in Medina County, where he lives and does business.

Additionally, Douglas alleges and would prove that he and Consuella purchased 80 acres of land that had been part of the historic Ulbrich Ranch from his sister, showing that both Mr. and Mrs. Ulbrich committed a substantial investment and a firm commitment early in their marriage to be a ranching family.

Therefore, considering all of the summary judgment evidence in the record

of this case, Douglas submits that the summary judgment evidence clearly shows that there are genuine issues of material fact as to his claim that the Ulbrich Ranch is his probate homestead. The existence of genuine issues of material fact are for a jury to decide, not for the Court to determine as a matter of law, which precludes summary judgment.

Douglas respectfully submits that the Order Granting Motion for Summary Judgment [CR 269-270] was signed in error on November 5, 2014 because there were genuine issues of material fact as to each of the findings as matters of law that the homestead of the Decedent was 3939 Starhill, San Antonio, Texas; that the Texas Constitution's Survivor Homestead granted to Douglas Ulbrich was 3939 Starhill, San Antonio, Texas; that Douglas Ulbrich has voluntarily abandoned and discontinued use of the Texas Constitution's Survivor Homestead located at 3939 Starhill, San Antonio, Texas; and that Douglas Ulbrich cannot transfer the Texas Constitution's Survivor Homestead to any other property.

CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, the Douglas J. Ulbrich, Decedent's surviving spouse, respectfully requests this Court reverse the summary judgment in its entirety and remand this case to the trial court for further

proceedings. Mr. Ulbrich requests such further relief at law or in equity to which he may be justly entitled.

Respectfully submitted,

Philip M. Ross
SBN 17304200
1006 Holbrook Road
San Antonio, Texas 78218
Phone: 210/326-2100
Email: ross_law@hotmail.com

By: /s/ Philip M. Ross
Philip M. Ross
Attorney for Douglas J. Ulbrich

CERTIFICATION

I hereby certify that every factual statement in the brief is supported by competent evidence included in the appendix or record.

/s/ Philip M. Ross
Philip M. Ross

CERTIFICATE OF COMPLIANCE

I hereby certify that this brief is in compliance with Texas Rule of Appellate Procedure Rule 9. It contains 11,482 words, 45 pages, 14 point typeface.

/s/ Philip M. Ross
Philip M. Ross

45

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been e-filed and sent on February 10, 2015 in compliance with the Texas Rules of Appellate Procedure and/or by email pursuant to agreement to the following attorneys:

Kristine Arlitt                            William Bailey
206 E. Locust St.                     1100 N. W. Loop 410, Suite 700
San Antonio, Texas 78209      San Antonio, Texas 78213


/s/  Philip M. Ross
Philip M. Ross